# CASES ARGUED AND DETERMINED

IN

# THE SUPREME COURT,

## JULY TERM, 1858.

~~~~~~~~~~~~~~~~~~~

## THE PEOPLE *ex rel.* ATTORNEY-GENERAL *v.* ADDISON.

The intention of the Legislature to create the office of gauger by the act of May 3, 1852, entitled "An Act to provide for the Appointment of a Gauger for the Port of San Francisco," is too clear to admit of doubt.

The office having been created, must be presumed to be continuing, unless limited .by the terms of the act, or by the nature of the duties to be performed.

There is nothing temporary in the duties of the office. Nor is there anything in the language of the act limiting the duration of the office.

The period of two years, mentioned in the first section, limits *only* the term of the officer and not the duration of the office.

Where the appointment to an office is vested in the Governor, with the advice and consent of the Senate, and the term of the incumbent expires during the recess of the Senate, the Governor has the right to fill such vacancy, and his appointment vests in the appointee the right to hold and discharge the duties of such office for the full term, subject only to be defeated by the non-concurrence of the Senate.

APPEAL from the District Court of the Fourth Judicial District, County of San Francisco.

This was an information in the nature of a *quo warranto*, filed by the Attorney-General against John E. Addison, who was alleged to have usurped, without authority, the office of "gauger of wines and liquors for the city of San Francisco."

The Legislature, on the third day of May, 1852, passed an act entitled "An Act to provide for the appointment of a Gauger for the Port of San Francisco." By the first section of this act, "the

1

Governor is authorized and directed to appoint, by and with the advice of the Senate, a gauger of wines and liquors, to reside in the city of San Francisco, and to continue in office for two years."

Under this act, on or about the twentieth day of May, 1852, William H. Hoburg was appointed, commissioned, and qualified, and discharged the duties for two years, at which time he was re-appointed, and discharged the duties for two years more. On the twenty-fourth day of May, 1856, Lansing B. Mizner was appointed, commissioned, and qualified, and discharged the duties for two years from the date of his appointment. On the twenty-fifth day of May, 1858, and during the recess of the Legislature, the defendant, John E. Addison, was appointed and commissioned by the Governor, and subsequently duly qualified, and entered upon the discharge of the duties of said office, and continued in the discharge of the same up to the time of the filing this information.

By the stipulation of the parties, judgment was entered in the Court below, *pro forma*, for the defendant, Addison. From which, the Attorney-General, on behalf of the People, appealed to this Court.

*Thompson & Irving* for Appellant.

The only question presented is, whether the act entitled "An Act to provide for the appointment of a Gauger for the Port of San Francisco," passed May 3, 1852, created a permanent office, to continue as long as the act remained in force, or whether, by the terms of the act, the office expired by limitation at the expiration of two years, for which period the gauger, appointed under its provisions, was to continue in office.

This is a simple question of construction, and must be decided by the well-settled rules which govern in the construction of statutes in other cases.

The first section of the act authorizes the Governor to appoint, by and with the advice of the Senate, a gauger of wines and liquors, to reside in the city of San Francisco, "and to continue in office for two years."

The remaining sections define the duties of the gauger, and impose a penalty on all persons in said city selling wines and liquors without the inspector's mark thereon.

We have examined the authorities carefully on this subject, and can find no decision bearing directly on the point. The case of "The People *ex rel.* Ryder *v.* Mizner," decided by this Court, 7 Cal., 519, can not be considered as conclusive on the question, although the Court say, in their opinion, that the office was created by the above-mentioned act; yet as neither of the parties contested the existence of the office, that question could not be considered as before the Court; its mere *dictum*, therefore, upon

that point can not be considered as authority. The question must, therefore, be decided upon the language of the statute itself. That language is, to say the least of it, ambiguous, and if construed literally, would limit the office to two years. There is nothing in the act itself which would authorize any other construction. The Legislature may have intended the act as an experiment of the utility and policy of which they were doubtful, and, therefore, limited its duration to two years, and leaving it to a future Legislature to continue its provisions, if they should deem it expedient. If this construction is correct, in the absence of any further action of the Legislature on the subject, the office would necessarily become extinct at the expiration of that period.

*Hoge & Wilson* for Respondent.

It is contended by the Attorney-General that the decision and judgment is erroneous, because the act of 1852 has expired by its own terms, and is no longer in force, and that, therefore, the appointment of the Governor is without authority of law and void, there being no such office in existence.

This objection is based upon the position, that the act of 1852 only provided for a single term of two years, and did not create a permanent office, to be again filled upon the expiration of the term of the first incumbent.

It seems to the respondent that it is only necessary to state the proposition to refute it. The act creates the office of " gauger," prescribes his duties, the mode of his appointment, the duration of the term, and the necessary bonds to be given before entering upon the duties of the office. The Governor is not only authorized, but directed, to make the appointment in the manner pointed out by the law. The officer is required to reside in the city of San Francisco, and before entering upon the duties of the office, to take the oath and give the necessary bonds, and to continue in office for two years. There is no limitation to the duration of the act, which, it is submitted, is uniformly done when it is intended that a law shall continue in force for a limited time. The power vested in the Governor and Senate, is a continuing power, called into action as often as the term expires, or a vacancy occurs under the general law. The office thus created, with or without an incumbent, can only cease to exist by a repeal of the law creating it. The power to fill it every two years, is a continually recurring power. Such seems to have been the understanding of the Executive of the State, of the Senate, and of the Supreme Court. The office was created in 1852. The first appointee, at the expiration of his first two years, was re-appointed, and confirmed by the Senate, and again served a second term of two years. Again the appointing power is called into action, and a third incumbent executes the

duties of the office, which, according to the argument, had ceased to exist years before, for another term of two years, after having maintained his right to do so by the judgment of this honorable Court, as rendered in the cause of The People on the relation of Ryder *v.* Mizner.

And now, when the respondent, the fifth appointee from the creation of the office, has entered upon its duties in pursuance of the appointment and commission of the Governor, it is suddenly discovered that there is no such office in existence; that the act of 1852 ceased to operate at the end of two years; and that the Governor, the Senate, the Supreme Court, and the contending applicants, have stultified themselves, and have been fighting over shadows for the last four years—filling imaginary offices, and passing upon the rights of imaginary incumbents. Certainly, to maintain such conclusions, the argument should be irresistible.

It can not be necessary to revert to the well-known rules of construction which govern Courts in passing upon the force and effect of statutes. The object and intention of the Legislature is sufficiently manifest from the provisions of the act itself, and still more so from its history, as it passed through the Senate and Assembly, to be found in the journals of both Houses for the third session of our Legislature. The office was created for public purposes, and from public necessities. It is difficult to understand how these public purposes and necessities would be less operative at the end of two years. That the Legislature supposed they were creating a permanent office, in order to subserve those public purposes, is beyond all question. Have they so badly effected that object by the language in which they have thought proper to clothe their intentions as, in the judgment of this Court, utterly to defeat their own design.

The argument is, that the act does not create any permanent office, or any office at all.

The latter part of the position is of course absurd, as, if the act created no office at all, it is not perceived by what authority the Governor could proceed to fill an office which had no existence. In that view, the first appointment would be equally bad with the second. But the argument admits that the office was in existence for two years, and assumes that it ceased to exist at the end of that time, and that no second appointment could be made for a second term. The vice of the argument is in confounding the office itself with the term of the incumbent. The limitation in the law is not upon the existence of the office, but upon the period for which the incumbent is to enjoy its privileges.

The office, when once created, must exist until destroyed by the same power which created it. That existence is wholly unaffected by the tenure of the incumbent. If the words "and until his successor is qualified," had been added at the close of

the first section, no one would have questioned the permanence of the office. And yet these words would have in no degree strengthened our position. They would have been but a further qualification of the tenure of the incumbent. Without them, possibly, his term would end with the expiration of two years, and he would have no right to continue in the enjoyment of the office until the appointment and qualification of his successor, however long. it might be delayed. Such delay would merely leave an *interregnum* in the office. To prevent this public inconvenience, is the sole reason for adding such words. The power to appoint the successor is in no way derived from such words. With, or without them, the power is the same. It results from the provisions of the Constitution and the general laws in relation to the appointments to office, and the filling of vacancies in the same.

In this particular case, the law itself settles the question. The power of appointment is in the Governor and Senate, and is called into operation as often as the exigencies of the office require.

It is not perceived why the case of The People on the relation of Ryder v. Mizner, decided by this Court, 7 California Reports, 519, is not conclusive of this controversy. That case was a contest between Ryder and Mizner, as to their respective rights to this very office. Its decision involved the consideration of the powers and duties of the Governor, under the Constitution and laws, in relation to vacancies in office generally, and particularly under the law now in question, and necessarily decided the question now raised. The Court do not specially comment upon this precise point, simply because nobody, for a moment, supposed that the law admitted of any such construction. The law was before them, and everything that had been done under its provisions. The rights of the parties before the Court necessarily depended upon their proper construction in connection with the Constitution and general laws. If there had been anything in the point now raised, it would have afforded an easy solution to the difficulty, and saved the Court the necessity of an elaborate discussion of grave constitutional law involved in the rights of the parties to an office, which, by the very law the Court were considering, had no existence. Our respect for this high tribunal of last resort, will not for a moment permit us to believe it could have so stultified itself. On the contrary, the very first sentence in the opinion of the Court in the case referred to, shows very conclusively that the Court understood the law as we understand it, and construed it as every branch of the State government has continued to do from the time of its passage. The Court say: "By the act of May 3, 1852, the office of gauger of wines and liquors was created, and the duration of the term fixed at the period of two years, the office to be filled by the ap-

pointment of the Governor, by and with the advice of the Senate." The Court then go on to recite the facts, and to apply the principles of the Constitution and laws to the rights of the parties to the office in question in such a manner, as, in our judgment, to set at rest for ever the quibble now raised. The Court were well aware that the language used by the Legislature to express their will and intention, was usual and ordinary with legislative bodies in the creation and filling of offices. When that body creates an office, provides the mode of filling it, and prescribes the duties and term of the incumbent, it has done all that is necessary. If the Legislature intends that its action shall be temporary, it so provides. In the absence of such express provision, that creation is of course permanent. It would be difficult to find in any law a provision that it should continue to be law until repealed. The language employed by the Legislature in the creation of this office, is the same employed in the creation of many other offices, both by the Legislature of the State, and by Congress, in the creation of federal offices. It is yet to be learned that any such office ceases with the term of the first incumbent.

As examples of similar legislation, we cite the Court to the Act for the appointment of Pilots, Comp. Laws, 95; to the Act appointing Commissioner of Emigrants, Comp. Laws, 230. We might cite many such cases. The eighth section of the sixth article of the Constitution, providing for the election of County Judges, is liable to the same verbal criticism. The instances, in federal legislation, are innumerable. The President appoints district-attorneys, registers, and receivers of land offices, collectors, etc., under similar provisions of law. Indeed, it is a matter of indifference whether the law creating any particular office, prescribes the duration or term at all. The seventh section of article eleven of the Constitution, makes ample provision for all such cases.

The practice of the State and of the general government has, without question from any quarter, been in conformity with this doctrine. The contrary theory would have resulted in great public confusion. A construction of an act of the Legislature so excessively technical and unreasonable, and resulting in the defeat of the manifest intentions of the government, it is confidently believed, can never receive the sanction of this Court.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., and FIELD, J., concurring.

The objections made against the claim of the defendant are two:

1. That there is no such office *now* in existence, it having expired by the limitation in the act creating it.

2. That the defendant was appointed in the recess of the Senate.

The office was created by the act of May 3, 1852, the first section of which reads as follows:

"The Governor is hereby authorized and directed to appoint, by and with the advice and consent of the Senate, a gauger of wines and liquors, to reside in the city of San Francisco, and to continue in office two years."

The second section requires the gauger to take the oath of office, and give bond for the faithful discharge of his duties; the third section prescribes his duties and compensation; and the fourth fixes the penalty to be incurred for selling liquors without previous inspection.

It is true there are no words in the act expressly creating the office. It is also true, that in most of the acts creating offices there are either express words creating the office, or there is a provision that the incumbent shall hold his office for a given period, and until his successor is elected and qualified. But we think the intention of the Legislature to create the *office* of gauger is too clear to be doubted. The first and second sections speak of the "office;" the third, of the "officer;" and the first, of "gauger;" and the fourth, of "inspector." The office having been created, must be presumed to be continuing, unless limited by the terms of the act, or by the nature of the duties to be performed. In reference to this office, there is nothing *temporary* in its duties, nor is there anything in the language of the act limiting the duration of the office itself. The period of two years mentioned in the first section, only limits the term of the officer, and not the duration of the office. The fact that there is no provision in the act, allowing the incumbent to hold over until his successor is appointed and qualified, might confine his official existence strictly to the term mentioned.

As to the second objection, that was settled by the decision of this Court in the case of The People *v.* Mizner, (7 Cal. Rep., 519.)

Judgment affirmed.