ANGELA SANTAELLA, Petitioner, *v.* E. GARRIDO MORALES, ETC., Respondent.

No. 11. Argued April 3, 1936.—Decided June 3, 1936.

Ismael Soldevila for petitioner. B. Fernández García, Attorney General, T. Torres Pérez, Celestino Iriarte, F. Fernández Cuyar and Héctor González Blanes for respondent.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

The petitioner and appellant, Angela Santaella, Director of the Insular Home for Girls, filed a complaint in the District Court of San Juan against the Commissioner of Health of Puerto Rico, Dr. E. Garrido Morales, requesting an injunction to prevent the said officer from removing the petitioner from her office, on the pretext that the same · has been suppressed and eliminated as a consequence of the fact that the corresponding appropriation for the payment of the salary was not included in the appropriation act for the current fiscal year, despite the fact that the said office was created by previous acts which have ·not been expressly repealed.

On July 26, 1935, the district court issued a restraining order. After the hearing on the petition for an injunction *pendente lite,* the court rendered its decision on March 25, 1926, denying the petition and vacating the order issued. A motion for reconsideration, and to leave the restraining order in force pending an appeal to this Supreme Court, was denied.

The petitioner has filed in the lower court a notice of appeal from the order of March 25, 1936, and now requests of this court a writ of injunction, in aid of the appeal taken, to restrain the defendant from effecting the removal of the petitioner pending the appeal.

It is alleged in the verified petition presented to this court, that on March 26, 1936, the defendant, in his official capacity, addressed a letter to the petitioner, in which he orders her

to vacate the premises which, as Director of the Insular Home for Girls, she occupies in the said institution, and to deliver the property in her custody to the administrator of the Home, both orders to be complied with before March 31, 1936.

In the petition before us it is also alleged that it is just to maintain the *status quo* while the appeal taken is decided; that the continuance of the petitioner in the Home for Girls can not cause any damage, and if it should, it would be covered by the bond which the petitioner offers; that on the other hand the damage to the petitioner would be irreparable; that if one or the other of the remedies requested is not granted, the favorable decision of the appeal taken would be illusory and academic, since if the defendant is allowed to remove the petitioner from her office and oust her from her home, the latter would have no adequate remedy to protect herself after those acts had been done.

In this case the original jurisdiction of the Supreme Court is invoked, and a writ of injunction is requested to restrain the defendant from effecting acts which the petitioner alleges are illegal and constitute a violation of her rights.

Considering that the case was too important for the petition for an injunction to be flatly denied, or for the writ to be issued without giving the defendant an opportunity to be heard, this court issued an order to the defendant to show cause why the writ of injunction should not issue and to abstain in the meantime from removing the petitioner from her office of Director General (Superintendent) of the Insular Home for Girls, as well as from any other act tending to dispossess the petitioner of the premises which she occupies in the said institution.

There is no doubt that this court has ample power or jurisdiction to issue writs of injunction in adequate cases "to enforce its jurisdiction". See: Section 676, Code of Civil Procedure of Puerto Rico, 1933 Ed.; *Héreter* v. *Reguero et al.*, 40 P.R.R. 888 and *Rodríguez* v. *Saldaña*, 38 P.R.R. 356.

We cannot now go into the merits of the question to decide whether or not the district court erred in dismissing the petition for a preliminary injunction and in vacating the restraining order. We should only decide whether or not the petition presented before this court, invoking its original jurisdiction, makes out a prima facie case justifying the issuance of the writ requested, as a necessary means for enforcing its jurisdiction over the appeal pending before it.

■ At the hearing on the order to show cause the defendant offered in evidence record no. 23354 of the District Court of San Juan and the plaintiff offered the typewritten record of the hearing held in the said court in relation with the same case, and two volumes which contain the minutes of the Executive Council of Puerto Rico for the period from February 6, 1901 to December 31, 1902.

The evidence presented in support of the petition shows that on August 10, 1909, the petitioner held the office of a teacher in the Girls Charity School, and that on that date she was promoted to the office of Superintendent of the said institution; that the appointment to this new office was made by the Director of Health, Charities and Corrections; and that the petitioner has continued from that date to occupy the said office of Superintendent until July 25, 1935, when the defendant, in his capacity as Commissioner of Health, addressed a letter to her informing her that the Appropriation Act approved for the fiscal year of 1935–1936 did not contain an appropriation for the salary of the Superintendent of the Insular Home for Girls, and that the said office had been eliminated by the said act.

This is not a case in which the head of a department removes a public employee or officer, without just cause and without giving him an opportunity to be heard, and the officer resorts to an injunction in order to remain in office, or to mandamus in order to be restored to it.

The question is:

Has the Legislature of Puerto Rico power to abolish the office of Superintendent of the Insular Home for Girls, and if so, can it exercise this power by suppression in the Insular Appropriation Act of the item necessary to cover the salary of the incumbent of said office?

The petitioner alleges that the office of Superintendent was created and exists by virtue of the act of January 31, 1901 (Session Laws, p. 162–163); that the creation and existence of the said office were reaffirmed by all the appropriation acts subsequently approved and especially by Section 3 of the act of March 10, 1904 (Revised Statutes of Puerto Rico of 1911, Section 2828), by Section 1 of Joint Resolution No. 7 of November 9, 1917 (Session Laws, Vol. II, p. 671 and by Section 6 of the Civil Service Act; that the Appropriation Act for the fiscal year 1935–1936 is null and void because the Legislature lacks authority to create or abolish public offices on the general appropriation act; that the said act is also null and void because the Legislature lacks authority to legislate in a general appropriation act, and that the abolition of a public office is a legislative act; and lastly, that even though the Legislature has failed to make an appropriation for the salary of the plaintiff, the salary previously fixed should be paid without the need of a new appropriation.

Let us examine carefully the legislation cited by the petitioner in support of her contention that the office of Superintendent was created and exists by virtue of a special act.

The Act of January 31, 1901, abolished the old Board of Charity and transferred the administrative and executive control of all charitable institutions to the Director of Charities, a new office created by the same act. Section 7 of this act provided that all the superintendents, assistants, clerks, domestics and others should be appointed by the Director of Charities in accordance with the regulations adopted by the Executive Council.

The Regulations of the Executive Council, approved on April 10, 1901, provided that the Superintendents of charity

schools should be appointed by the Director, with the approval of the Executive Council; that they could be removed when the good of the service so required; and that they were authorized to reside in the institution and were in charge of the internal discipline of the school. According to the act and the regulations cited, on March 18, 1901, the Director submitted to the Executive Council for approval a list of the employees of the charitable institutions, and in it appeared the Superintendent of the Girls Charity School, with a salary of $1,000 per annum. Those appointments were approved by the Council.

The act of March 10, 1904, consolidated the offices of Director of Charities, Director of Prisons and Director of Health, created an office of Health, Charities and Corrections, and conferred on the head of the new department the power to appoint, with the consent of the Executive Council, the *superintendents of institutions,* salaries to be fixed by the Council.

By Joint Resolution No. 7 of November 9, 1917, charity schools were incorporated to the new Department of Health created by the Organic Act of Puerto Rico, of March 2, 1917, and all the employees of the said institutions became employees of the Department of Health. And by Act No. 20 of June 8, 1921 (Session Laws, p. 155) the Commissioner of Health was charged with the control and management of the said institutions.

Counsel for the appellant argues that she is a public officer; that her office was created and left to subsist by special acts of the Legislature; and that the said office exists entirely independent from the appropriation acts. In support of this contention he cites, among others, the cases of *Patton* v. *Board of Health,* 127 Cal. 388 and *People* v. *Addison,* 10 Cal. 1-2, 7.

We really do not see the applicability of those cases to the instant case. In *Patton* v. *Board of Health, supra,* the plaintiff requested a mandatory writ to the effect that he be admit-

ted to the office of Health Inspector. The Board of Health had appointed the plaintiff to one of the six posts of inspector provided by the Political Code of California; but the order for his appointment did not specify or limit in any way the term during which the plaintiff was to hold the said office. The board ordered the removal of the plaintiff without bringing charges and without giving him an opportunity to defend himself. The Supreme Court in vacating the writ issued by the lower court said:

"It seems to be reasonably well settled that where the legislature creates the position, prescribes the duties, and fixes the compensation, and these duties pertain to the public and are continuing and permanent, not occasional or temporary, such position or employment is an office and he who occupies it is an officer. In such a case, there is an unmistakable declaration by the legislature that some portion, great or small, of the sovereign functions of government are to be exercised for the benefit of the public, and the legislature has decided for itself that the employment is of sufficient dignity and importance to be deemed to be an office.

"It is only where the legislature has delegated its power to create the office and to prescribe the duties and compensation, that differences of opinion have arisen in the courts . . .

"Our conclusion is that the intention of the legislature was to make the health inspectors officers within the meaning of the constitution, and, having failed to declare the term of the office, they hold during the pleasure of the board of health. (Citations.)"

The other case, *People* v. *Addison, supra,* only holds that it should be presumed that a public office created by law is continuous, unless its duration is limited by the act creating it or by the nature of the duties to be fulfilled.

The office of Superintendent of the Insular Home for Girls has not been created by any act. The act of January 31, 1901, only empowered the Director of Charities to appoint all the subordinate employees necessary for the administration and operation of the institutions; and although it mentions superintendents, it does not determine the number which may or should be appointed, nor does it fix their duties, their

salaries, or the term for which they should be appointed. The same may be said of the act of March 10, 1904, which created the office of Health, Charities and Corrections. The language used by the legislator in both acts does not show his intention to create such an office. See: 28 R.C.L. 421, 422, Section 67.

"In creating an office no particular language is necessary, it being sufficient if the intent of the legislature is manifested by the language used. However, an office is created by law only as a result of an act passed for that purpose; it cannot be created . . . by a mere appropriation for the payment of compensation to the incumbent of a specified position." 46 C. J. 934, sec. 29.

■ Nor could the office held by the petitioner have been created by the regulations approved by the Executive Council, since the said body did not have power to create offices, unless it created them as a co-legislative body, with the concurrence of the House of Delegates, and the approval of the Governor.

■ The fact that the salary of the petitioner has been set out in the general appropriation act covering the expenses of the Insular Government, for a number of consecutive years, cannot be used as an argument for contending that the office of Superintendent of the Insular Home for Girls was created by the Appropriation Act, since this court has already decided that no legislation of general character, especially that which has for its purpose the creation of an office, may be included in an appropriation act. See: *People* v. *Foote,* 48 P.R.R. 479; *Commonwealth* v. *Barnett,* 48 Atl. 976; *Constitutional Defense League* v. *Waters,* 164 Atl. 613, 309 Pa. 545; *State ex rel. Davis* v. *Smith,* 75 S.W. (2d.) 828.

The Civil Service Act, in including in the Classified Civil Service the office of Superintendent of the Insular Home for Girls, did not create the said office, but simply recognized its existence and placed it under its protection for the purpose of preventing the removal of the person holding it without

just cause and without an opportunity to be heard, so long as the Commissioner of Health maintained the said office; and this is not a case of the illegal removal of the petitioner. The Commissioner of Health is not bound to maintain the office of Superintendent indefinitely if in his opinion the suppression of the same should be necessary or convenient for the best service of the institutions which have been placed under his direction by provision of law. And since the office of Superintendent was not specifically created by any act, but by the Commissioner of Health in the exercise of the powers granted to him by law to appoint the subordinate personnel of his department, the said Commissioner may suppress the office of Superintendent when the interests of the service so require it.

"The authority in the government which possesses the power to create an office has, in the absence of some provision of law passed by a higher authority, the implied power to abolish the office it has created." 46 C. J. 934, sec. 30.

See *Vincenheller* v. *Reagan*, 64 S.W. 278.

The general appropriation act for the expenses of the Insular Government, according to the express provisions of the Organic Act (Section 15, paragraph 34) should embrace nothing but appropriations for the ordinary expenses of the executive, legislative and judicial departments, interest on the public debt, and for public schools. All other appropriations should be made by separate bills.

From the foregoing we see that the legislative power delegated in the Commissioner of Health the power to appoint the superintendents, servants and employees of the institutions under his direction, at such salaries as the legislature should fix annually for each one of the said employees, and it retained the power of not appropriating in the annual appropriation act any sum for payment of salary and thus abolish any office or employment which was not created by a special act. This leads us to the conclusion that the office of Superintendent, involved in this case, could be abolished,

either by the Commissioner in not making the appointment, or by the Legislature in eliminating the appropriation necessary to cover the salary of the said position.

The salary of the Superintendent of the Insular Home for Girls is not fixed by any special act. The Legislature has been making, year after year, in the general appropriation act, among the items for the Department of Health, an appropriation for the payment of the salary of the said Superintendent. These annual appropriations have been made on the recommendation or suggestion of the Commissioner of Health, who is the officer empowered to appoint the subordinate personnel to be employed in his department during the fiscal year to be covered by the budget approved annually by the Legislature.

In the Appropriation Act for the fiscal year 1935–1936 no appropriation whatever was made for the salary of the Superintendent of the Insular Home for Girls. We cannot presume that this suppression was made inadvertently or carelessly. The Commissioner of Health is the officer charged with the duty of submitting annually to the legislature the list of the employees which he will need during the fiscal year to carry out the work of his department. If the Commissioner did not ask for the appropriation for the salary of the Superintendent and if the Legislature did not include the said appropriation in the Appropriation Act for 1935–1936, we must infer that the intention of one or the other, or of both, was to suppress the office.

It is not incumbent upon this court to investigate or discuss the motives which the Commissioner of Health or the Legislature may have had for abolishing the office and for leaving the Insular Home for Girls without a superintendent.

The petition filed and the facts submitted to our consideration do not present sufficient grounds to justify the issuance of the writ of injunction *pendente lite* which has been requested.

The petition must be denied.

Mr. Justice Córdova Dávila took no part in the decision of this case.