ANGELA SANTAELLA, promovente, *v.* E. GARRIDO MORALES, COMISIONADO DE SANIDAD DE PUERTO RICO, demandado.

Núm. 11.—*Sometido:* Abril 3, 1936. *Resuelto:* Junio 3, 1936.

*Ismael Soldevila,* abogado de la promovente; *Hon. Procurador General B. Fernández García* y *T. Torres Pérez, Subprocurador,* y *Celestino Iriarte, F. Fernández Cuyar* y *Héctor González Blanes,* abogados del demandado.

Eʟ Juez Asociado Señor Travieso, emitió la opinión del tribunal.

La peticionaria y apelante, Ángela Santaella, Directora del Hogar Insular de Niñas, formuló demanda ante la Corte de Distrito de San Juan contra el Comisionado de Sanidad de Puerto Rico, Dr. E. Garrido Morales, solicitando sentencia de *injunction* para que dicho funcionario se abstuviera de separar a la peticionaria de su referido cargo, bajo el pretexto de que el mismo ha sido suprimido y eliminado como consecuencia de no haberse hecho en la ley de presupuesto para el corriente año fiscal la correspondiente asignación para pago del sueldo, no obstante haber sido creado dicho cargo por leyes anteriores que no han sido expresamente derogadas.

En 26 de julio de 1935 la corte de distrito dictó una orden de entredicho. Celebrada la vista sobre la petición de *injunction pendente lite,* la corte, en 25 de marzo de 1936, dictó su resolución declarando sin lugar la petición y disolviendo la orden dictada. Solicitada la reconsideración y que se dejara vigente la orden de entredicho, durante la tramitación de una apelación ante esta Corte Suprema, dicha solicitud fué denegada.

La peticionaria ha radicado en la corte inferior un escrito de apelación de la sentencia de marzo 25, 1936, y acude ahora ante esta corte en solicitud de un auto de *injunction,* en auxilio del recurso de apelación interpuesto, para que durante la tramitación del mismo el demandado se abstenga de llevar a efecto la remoción de la peticionaria.

Se alega en la solicitud jurada presentada a esta corte, que con fecha 26 de marzo de 1936, el demandado, en su carácter oficial, dirigió una carta a la peticionaria, por la que le ordena que desocupe el local que como Directora del Hogar Insular de Niñas ocupa en dicha institución y que entregue la propiedad bajo su custodia al administrador del Hogar, debiendo cumplirse ambas órdenes antes del día 31 de marzo de 1936.

En la petición ante nos se alega además, que es de justicia que se mantenga el *statu quo* mientras se decide el recurso interpuesto; que la permanencia de la peticionaria en el Hogar Insular de Niñas no puede causar daño alguno y que si alguno se causare, éste sería compensado por la fianza que la peticionaria ofrece prestar; que por el contrario los daños que habría de sufrir la peticionaria serían irreparables; que si no se concede uno u otro de los remedios que se solicitan, la resolución favorable del recurso de apelación interpuesto resultaría ilusoria y académica, pues si se permite que el demandado desposea de su cargo y eche de su hogar a la peticionaria, ésta no tendría después de realizados esos actos un remedio eficaz para su protección.

Se invoca en este caso la jurisdicción original del Tribunal Supremo, solicitando un auto de *injunction* contra el demandado para impedir la realización por éste de actos que la peticionaria alega son ilegales y constituyen una violación de sus derechos.

Considerando que el caso revestía suficiente importancia para que pudiera denegarse la solicitud de *injunction* de plano o decretarse la expedición del auto sin dar a la parte demandada una oportunidad de ser oída, esta corte expidió una orden requiriendo al demandado para que mostrase las causas o razones por las cuales no. deba librarse el auto de *injunction* y ordenando a dicho demandado que mientras tanto se abstenga de remover a la peticionaria de su cargo de Directora General (Superintendente) del Hogar Insular de

Niñas, así como de realizar cualquier otro acto tendiente a desposeer a la peticionaria del local que ocupa en dicha institución.

■ Es indudable que esta corte tiene amplia facultad o jurisdicción para librar en casos adecuados autos de *injunction* con el fin de "hacer efectiva su jurisdicción." Véase: Artículo 676, Código de Enjuiciamiento Civil de Puerto Rico (Ed. 1933); *Héreter* v. *Reguero et al.,* 40 D.P.R. 925 y *Rodríguez* v. *Saldaña,* 38 D.P.R. 404.

No podemos entrar en este momento en el fondo de la cuestión para resolver si la corte de distrito erró o si procedió correctamente al declarar sin lugar la petición de *injunction* preliminar y disolver la orden de entredicho. Solamente debemos decidir si la petición presentada ante esta corte, invocando su jurisdicción original, presenta un caso prima facie, que justifique la expedición del auto solicitado, como medida necesaria para hacer efectiva su jurisdicción sobre el recurso de apelación pendiente ante ella.

■■■ En el acto de la vista de la orden para mostrar causa el demandado ofreció en evidencia el récord núm. 23354 de la Corte de Distrito de San Juan y el demandante el récord taquigráfico de la vista celebrada ante dicha corte en relación con el mismo caso, y dos volúmenes que contienen las actas del Consejo Ejecutivo de Puerto Rico por el período de febrero 6, 1901, a diciembre 31, 1902.

De la prueba presentada en apoyo de la solicitud aparece que en 10 de agosto de 1909 la peticionaria ocupaba el cargo de maestra en la Escuela de Beneficencia para Niñas, y que en esa fecha fué ascendida al cargo de Superintendente de dicha institución; que el nombramiento para este nuevo cargo le fué extendido por el Director del Departamento de Sanidad, Beneficencia y Correcciones; y que la peticionaria ha continuado desde esa fecha ocupando dicho cargo de Superintendente, hasta el día 25 de julio de 1935, cuando el demandado, en su carácter de Comisionado de Sanidad, le dirigió una comunicación por la que le informaba que la

Ley de Presupuesto aprobada para el ejercicio fiscal de 1935–36 no contenía asignación para el pago del sueldo de la Superintendente del Hogar Insular de Niñas, y que dicho cargo había sido eliminado en dicha ley.

No es éste un caso en que un Jefe de Departamento separa de su cargo a un empleado o funcionario público, sin justa causa y sin darle una oportunidad de ser oído, y el funcionario recurre al *injunction* para que se le mantenga en el puesto, o al *mandamus* para que se le reponga en él.

La cuestión que se presenta es:

¿Tiene la Legislatura de Puerto Rico facultad para abolir el cargo de Superintendente del Hogar Insular de Niñas, y en caso de que la tuviera, puede hacer uso de esa facultad mediante la supresión en la Ley del Presupuesto Insular de la partida necesaria para cubrir los sueldos de la incumbente de dicho cargo?

Alega la peticionaria que el cargo de Superintendente fué creado y existe por virtud de la ley de 31 de enero, 1901 (Leyes de 1901, págs. 162–163); que la creación y existencia de dicho cargo fueron reafirmadas por todas las leyes de presupuesto aprobadas con posterioridad y especialmente por la sección 3 de la ley de 10 de marzo de 1904 (Estatutos Revisados de Puerto Rico de 1911, sección 2828), por la sección 1 de la Resolución Conjunta núm. 7 de 9 de noviembre de 1917 (Leyes de 1917, vol. II, pág. 671), y por la sección 6 de la Ley de Servicio Civil; que la Ley de Presupuesto para el año fiscal 1935–36 es nula porque la Legislatura carece de autoridad para crear o para abolir cargos públicos en la ley general de presupuesto; que dicha ley es además nula porque la Legislatura carece de autoridad para legislar en una ley general de presupuesto, y que la abolición de un cargo público es un acto legislativo; y por último, que aún cuando la Legislatura ha dejado de hacer asignación para el sueldo de la demandante, el sueldo anteriormente fijado deberá ser pagado sin necesidad de nueva asignación.

Examinemos cuidadosamente la legislación citada por la peticionaria para sostener su contención de que el cargo de Superintendente fué creado y existe en virtud de una ley especial.

La ley de 31 de enero de 1901 abolió la antigua Junta de Beneficencia, y transfirió el control administrativo y ejecutivo de todas las instituciones de beneficencia al Director de Beneficencia, nuevo cargo creado por la misma ley. Ésta disponía en su sección 7 que todos los *superintendentes*, auxiliares, escribientes, domésticos y otros serían nombrados por el Director de Beneficencia de acuerdo con las reglas que adoptara el Consejo Ejecutivo.

El Reglamento del Consejo Ejecutivo, aprobado en 10 de abril de 1901, disponía que los Superintendentes de las escuelas de beneficencia serían nombrados por el Director, con la aprobación del Consejo Ejecutivo; que podrían ser destituídos cuando la conveniencia del servicio lo requiera; y que estaban autorizados para residir en la institución y tener a su cargo la disciplina interior de la escuela. De acuerdo con la ley y el reglamento antes citados, en marzo 18, 1901, el Director sometió a la aprobación del Consejo una relación de los empleados para las instituciones benéficas y en ella aparecía el Superintendente de la Escuela de Beneficencia para Niñas, con sueldo de $1,000 anuales. Esos nombramientos fueron aprobados por el Consejo.

La ley de marzo 10 de 1904 consolidó los cargos de Director de Beneficencia, Director de Prisiones y Director de Sanidad, creó el Departamento de Sanidad, Beneficencia y Correcciones y confirió al director del nuevo departamento la facultad de nombrar, con el consentimiento del Consejo Ejecutivo, los *superintendentes de instituciones,* con los sueldos que fijare el Consejo

Por Resolución Conjunta núm. 7 de 9 de noviembre de 1917, las escuelas de beneficencia fueron adscritas al nuevo Departamento de Sanidad creado por la Ley Orgánica de Puerto Rico, de 2 de marzo, 1917, y todos los empleados de

dichas instituciones pasaron a serlo del Departamento de Sanidad. Y por la Ley núm. 20 de junio 8, 1921 (pág. 155), el Comisionado de Sanidad se hizo cargo del gobierno y administración de dichas instituciones.

Arguye la representación de la apelante que ésta es un "funcionario público" (*public officer*); que su cargo fué creado y dejado subsistente por leyes especiales de la Legislatura; y que dicho cargo existe con absoluta independencia de las leyes de presupuesto. Y en apoyo de su contención cita, entre otros, los casos de *Patton* v. *Board of Health*, 127 Cal. 388 y *People* v. *Addison*, 10 Cal. 1–2, 7.

No vemos realmente la aplicabilidad de estos casos al caso de autos. En *Patton* v. *Board of Health*, supra, el demandante solicitó un auto mandatorio para que se le admitiese en el cargo de inspector de Sanidad. La Junta de Sanidad había nombrado al demandante para ocupar uno de los seis puestos de inspectores provistos por el Código Político de California; pero en la orden de su nombramiento no se especificaba ni se limitaba en manera alguna el término durante el cual el demandante habría de ocupar el cargo. La junta ordenó la separación del demandante sin formularle cargos y sin darle oportunidad de defenderse. La Corte Suprema al revocar el auto expedido por la corte inferior dijo:

"Parece estar razonablemente sentado que cuando la Legislatura crea el puesto, prescribe sus deberes, y fija la compensación, y esos deberes se relacionan con el público y son continuos y permanentes, no ocasionales o temporales, tal puesto o empleo es un cargo público (*office*) y el que lo ocupa un funcionario (*officer*). En ese caso, existe una declaración inequívoca de la Legislatura de que alguna parte, grande o pequeña, de las funciones soberanas del Gobierno habrán de ser ejercidas en beneficio del público, y la Legislatura ha resuelto por sí misma que el empleo es de dignidad e importancia suficientes para que se considere como un cargo público.

"Es solamente cuando la Legislatura ha delegado su facultad para crear el cargo y para prescribir sus deberes y fijar el sueldo, que han surgido diferencias de opinión entre los tribunales. . . . . .

154

"Nuestra conclusión es que la Legislatura tuvo la intención de hacer a los inspectores de Sanidad 'funcionarios' en el sentido constitucional, y, habiendo omitido declarar el término de duración del cargo, dichos funcionarios lo ocupan a voluntad de la Junta de Sanidad.   (Citas.) "

El otro caso, *People* v. *Addison,* supra, solamente sostiene que debe presumirse que un cargo público creado por una ley es continuo, a menos que su duración estuviere limitada por la ley creadora o por la naturaleza de los deberes que han de cumplirse.

El cargo de Superintendente del Hogar Insular de Niñas no ha sido creado por ley alguna.   La ley de 31 de enero de 1901 solamente facultó al Director de Beneficencia para nombrar todos los empleados subalternos que fueren necesarios para la administración y manejo de las instituciones; y aunque habla de superintendentes, no determina el número de éstos que puedan o deban ser nombrados, ni tampoco fija sus deberes, ni los sueldos, ni el término por el que deban ser hechos los nombramientos.   Igual puede decirse de la ley de 10 de marzo de 1904 que creó la Dirección de Sanidad, Beneficencia y Correcciones.   El lenguaje usado por el legislador en ambas leyes no demuestra su intención de crear tal cargo. Véase : 28 R.C.L. 421, 422, sección 67.

"Para crear un cargo no es necesario usar un lenguaje especial, siendo suficiente si la intención de la Legislatura se manifiesta por el lenguaje usado.   Sin embargo, un cargo es creado legalmente tan sólo como resultado de una ley aprobada para ese propósito; no puede ser creado . . . por una simple asignación para el pago de compensación al incumbente de un puesto determinado."   46 C. J. 334, sec. 29.

Tampoco pudo ser creado el cargo que ocupaba la peticionaria, por los reglamentos aprobados por el Consejo Ejecutivo, pues dicho cuerpo no tenía facultades para crear cargos, a menos que los creara como cuerpo colegislador, con la concurrencia de la Cámara de Delegados y la aprobación del Gobernador.

El hecho de que los salarios de la peticionaria hayan sido consignados en el presupuesto general de gastos del Gobierno Insular, durante un número de años consecutivos, no puede ser aducido como argumento para sostener que el cargo de Superintendente del Hogar Insular de Niñas fué creado por la Ley de Presupuesto, pues esta corte ha resuelto ya que ninguna legislación de carácter general, especialmente aquélla que tiene por objeto la creación de un cargo, podrá ser incluída en una ley de presupuesto. Véanse: *Pueblo* v. *Foote,* 48 D.P.R. 492; *Commonwealth* v. *Barnett,* 48 Atl. 976; *Constitutional Defense League* v. *Waters,* 164 Atl. 613, 309 Pa. 545; *State ex rel. Davis* v. *Smith,* 75 S.W. (2d.) 828.

La Ley de Servicio Civil, al incluir en el Servicio Clasificado el cargo de Superintendente del Hogar Insular de Niñas, no creó dicho cargo, sino simplemente reconoció su existencia y lo puso bajo su amparo con el propósito de que mientras el cargo sea sostenido por el Comisionado de Sanidad, la persona designada para ocuparlo no pueda ser removida sin justa causa y sin oportunidad de ser oída; y no se trata en este caso de una separación ilegal de la peticionaria. No está obligado el Comisionado de Sanidad a conservar el puesto de Superintendente indefinidamente, si en su opinión la supresión del mismo fuera necesaria o conveniente para el mejor servicio de las instituciones que por ministerio de la ley han sido puestas bajo su dirección. Y no habiendo sido creado el cargo de Superintendente específicamente por ley alguna, sino por el mismo Comisionado de Sanidad en el ejercicio de las facultades que la ley le confiere para nombrar el personal subalterno de su departamento, dicho Comisionado puede suprimir el cargo de Superintendente cuando el interés del servicio así lo requiera.

"La autoridad en el gobierno investida de facultad para crear un cargo tiene, a falta de alguna disposición legal aprobada por una autoridad superior, la facultad implícita para abolir el cargo que ha creado." 46 C. J. 934, sec. 29.

Véase: *Vincenheller* v. *Reagan,* 64 S. W. 278.

En el presupuesto general de gastos del Gobierno Insular, por mandato expreso de nuestra Ley Orgánica (Párrafo 15, art. 34), se deben incluir solamente las asignaciones para los gastos ordinarios de los departamentos ejecutivo, legislativo y judicial, para el pago de intereses de la deuda pública y para las escuelas públicas. Las demás asignaciones deberán hacerse en proyectos separados.

De lo expuesto anteriormente resulta que el poder legislador delegó en el Comisionado de Sanidad la facultad de nombrar los superintendentes, sirvientes y empleados de las instituciones bajo su dirección, con aquellos sueldos que la legislatura fijare anualmente, para cada uno de dichos empleados, y se reservó la facultad de no asignar en el presupuesto anual de gastos suma alguna para el pago del sueldo y la de abolir en esa forma cualquier cargo o empleo, no creado por ley especial alguna. Esto nos lleva a la conclusión de que el cargo de Superintendente, envuelto en este caso, podía ser abolido, bien por el Comisionado, dejando de hacer el nombramiento, o bien por la Legislatura mediante la eliminación de la partida necesaria para cubrir el sueldo de dicho empleo.

El sueldo de la Superintendente del Hogar Insular de Niñas no está fijado por ley especial alguna. La Legislatura ha venido, año tras año, haciendo en el presupuesto general, entre las asignaciones para el Departamento de Sanidad, una para el pago del sueldo de la referida Superintendente. Esas asignaciones anuales se han hecho por recomendación o a propuesta del Comisionado de Sanidad, que es el funcionario capacitado para designar el personal subalterno que ha de emplear en su departamento durante el año fiscal que ha de cubrir el presupuesto que la Legislatura aprueba anualmente.

En la Ley de Presupuesto para el año fiscal 1935–36 no se incluyó asignación alguna para el pago del sueldo de la Superintendente del Hogar Insular de Niñas. No podemos presumir que esa supresión fuera hecha por inadvertencia o por descuido. El Comisionado de Sanidad es el funcionario en-

cargado de someter anualmente a la legislatura la lista de los empleados que ha de necesitar durante el año fiscal para llevar a cabo la labor de su departamento. Si el Comisionado no pidió asignación para el sueldo de la Superintendente, y si la Legislatura no incluyó dicha asignación en el presupuesto de 1935-36, debemos inferir que la intención de uno y de otra o de ambos, fué la de suprimir el cargo.

■ No es de la incumbencia de esta corte investigar o discutir los motivos que haya podido tener el Comisionado de Sanidad o la Legislatura para abolir el cargo y dejar al Hogar Insular de Niñas sin una Superintendente.

La petición formulada y los hechos sometidos a nuestra consideración no presentan razones y motivos suficientes para justificar la expedición del auto de *injunction pendente lite* que se ha solicitado.

*La solicitud debe ser declarada sin lugar.*

El Juez Asociado señor Córdova Dávila no intervino.