JUAN G. RIVERA, peticionario, *v.* HON. REXFORD G. TUGWELL, GOBERNADOR DE PUERTO RICO, ET ALS., demandados.

Núm. 24.—*Sometido:* Enero 28, 1942. *Resuelto:* Enero 30, 1942.

*Santos P. Amadeo, Virgilio Brunet, Rafael Baragaño, Jr.,* y *José L. Novas,* abogados del peticionario; *Hon. Procurador General George A. Malcolm, Pablo Defendini, Procurador General Auxiliar* y *Angel E. Franco Cabrero, Subprocurador Auxiliar,* abogados de los demandados.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tribunal.

El peticionario radicó un recurso de sentencia declaratoria en la Corte de Distrito de San Juan al efecto de que la ley número 32, Leyes de Puerto Rico de 1941 (pág. 541), titulada "Ley para Prohibir y Evitar el Nepotismo y otras Prácticas Contrarias a una Sana Moral Administrativa" es inconstitucional en cuanto a él se aplica como maestro de escuela. El peticionario ha apelado a este tribunal de la orden de la corte inferior denegando su moción solicitando un *injunction pendente lite* dentro del recurso de sentencia declaratoria. El presente recurso es una petición original radicada ante esta corte solicitando un *injunction* "para hacer efectiva la jurisdicción" de este tribunal.

Los demandados alegan que la resolución de la corte inferior denegando un injunction pendente lite en un recurso de sentencia declaratoria no es apelable. Su contención es que, dado el caso de que no tenemos ante nos un recurso de apelación en debida forma, carecemos de jurisdicción para expedir un injunction en un pleito original radicado en esta corte para hacer efectiva nuestra jurisdicción apelativa.

Encontramos dificultad en convenir con esta contención de los demandados. Los libros están repletos de casos en los cuales cortes de apelación han intervenido en apelaciones de órdenes de cortes inferiores concediendo o denegando

injunctions preliminares. En verdad los abogados de los demandados aceptan que procede la apelación de una orden denegando un injunction preliminar, si el caso en la corte inferior hubiera sido un injunction en vez de una solicitud de sentencia declaratoria. Sin embargo, los demandados sostienen que las apelaciones de dichas órdenes preliminares están restringidas a recursos clásicos de injunction. Ésta es una nueva contención en apoyo de la cual los demandados no citan autoridades y en nuestra opinión no puede sostenerse. No vemos diferencia en sus efectos prácticos, dentro de las circunstancias que concurren en este caso, entre una petición de sentencia declaratoria unida a una moción de injunction pendente lite y un recurso de injunction en el cual se solicita el mismo injunction pendente lite. No podemos concluir que el derecho de apelación depende de aquella circunstancia fortuita como el título de la causa principal.

Es nuestro deseo aclarar que ahora no estamos entrando finalmente en la cuestión de si la orden de la corte inferior denegando un injunction pendente lite es apelable o no. Si los demandados así lo desean, ellos pueden revivir ese punto cuando la apelación se discuta en sus méritos, si es que esto ocurre. Solamente resolvemos en este momento que la cuestión de si es o no apelable la resolución de la corte inferior no se ha establecido claramente en contra del peticionario en tal forma que justifique el negarnos a considerar la presente petición de injunction en ayuda de nuestra jurisdicción apelativa.

Por tanto, creemos que es necesario resolver la petición ante esta corte en sus méritos. Si un peticionario ha levantado una cuestión seria y substancial en cuanto a la validez de una ley de la Legislatura de Puerto Rico en lo que a él se aplica en un recurso de sentencia declaratoria ante una corte de distrito y si él sufriera daños irreparables de no conservarse el *status quo* por este tribunal mientras la apelación estuviera pendiente, esta corte tiene el poder discrecional de acuerdo con la sección 676 del Código de Enjui-

ciamiento Civil de expedir un injunction a ese fin en un recurso original instado en ayuda de su jurisdicción apelativa (Compárense *Santaella* v. *Garrido,* 50 D.P.R. 147; *Roosevelt, Gobernador,* v. *Corte de Distrito,* 42 D.P.R. 833). Se hace necesario, por tanto, que determinemos si el peticionario ha presentado un caso bajo esa regla.

Rivera, el peticionario, y su esposa tienen nombramientos permanentes como maestros de escuela de Puerto Rico. Tienen contratos escritos con el Comisionado de Instrucción de Puerto Rico a ese efecto, de acuerdo con la ley número 312, Leyes de Puerto Rico de 1938 (pág. 574). Estos contratos celebrados antes de 1941 fijan sueldos anuales de $2,600 para él y de $850 para su esposa. Rivera y su esposa han sido maestros de escuela pública durante un número de años. Actualmente él es Principal de la Escuela Superior Central de Santurce y su esposa enseña en dicha escuela. Ellos "conviven bajo el mismo techo".

La ley número 32, Leyes de Puerto Rico de 1941 (pág. 541), comúnmente conocida como la Ley del Nepotismo, dispone que "ninguna familia podrá derivar de fondos públicos procedentes del Gobierno Insular . . . en forma de sueldos, una suma mayor de doscientos cincuenta (250) dólares mensuales." La ley también dispone que "se entenderá por familia . . . las personas comprendidas dentro del tercer grado de consanguinidad y el segundo de afinidad que convivan bajo el mismo techo. . ."

En el caso de *Indiana ex rel. Anderson* v. *Brand,* 303 U. S. 95, resuelto en 1938 por la Corte Suprema de los Estados Unidos, estaba envuelta la ley de Indiana de 1927 sobre contratos permanentes para los maestros. Esta ley disponía un período probatorio para los maestros de escuela pública, vencido el cual se convertían en maestros permanentes mediante contrato escrito. La ley también disponía que una vez expirado el término fijado en dicho contrato escrito, se sobreentiende que continúa en vigor y entonces se conoce como un contrato por tiempo indefinido. El Estado sola-

mente podía cancelar el contrato mediante causas provistas en la ley.

En 1933 la Asamblea Legislativa de Indiana trató de enmendar la referida Ley de Contratos Permanentes para Maestros, derogándola en tanto en cuanto se refería a maestros municipales *(township teachers)*. La Corte Suprema de los Estados Unidos resolvió en el caso de *Brand* que la ley enmendatoria era nula, ya que violaba el Artículo I, Sección 10, de la Constitución de Estados Unidos que provee que "ningún Estado aprobará ley alguna que menoscabe el valor de los contratos." La corte dice a la página 100:

"La función principal de un cuerpo legislativo no es hacer contratos, sino hacer leyes que declaren la política del Estado y que estén sujetas a ser derogadas cuando una Asamblea Legislativa posterior determine alterar esa política. Sin embargo, es cosa establecida que un decreto legislativo puede contener disposiciones que, una vez aceptadas por los individuos como base para actuar, se convierten en contratos entre ellos y el Estado o sus dependencias dentro de la protección del Artículo I, Sección 10. Si los representantes del pueblo consideran que es de interés público pueden adoptar una política de contratar en lo que respecta al servicio público por un período mayor que el de la actual Asamblea Legislativa."

El peticionario arguye en su alegato y sostuvo en su informe oral que la ley núm. 29, Leyes de Puerto Rico de 1931 (pág. 313), y la núm. 312, Leyes de Puerto Rico de 1938 (pág. 574), que disponen los requisitos, selección, contrato y permanencia de los maestros de escuela pública de Puerto Rico, son substancialmente similares a la Ley de Contratos Permanentes para Maestros de Indiana, particularmente en lo que se refiere al contrato permanente. Los demandados no han alegado nada en contrario. Hemos examinado las leyes de Puerto Rico de 1931 y 1938 y las hemos comparado con la ley de Indiana. Nos inclinamos a creer que las disposiciones de las leyes de Puerto Rico en lo que se refieren a la permanencia de contratos son suficientemente similares a las de la ley de Indiana para suscitar una cuestión seria y substancial en cuanto a la inconstitucionalidad de la Ley de

Nepotismo en tanto en cuanto se aplica a los maestros que, como el peticionario y su esposa, celebraron por escrito un contrato permanente con el Comisionado de Instrucción de acuerdo con las leyes de 1931 y 1938, con anterioridad a la aprobación de la Ley de Nepotismo.

El peticionario radicó un elaborado memorándum de autoridades en el cual trató de demostrar que la Ley de Nepotismo no puede aplicársele a él y a su esposa, porque marido y mujer no están incluídos en la definición de familia según consta de la ley; que si se interpreta la ley como cubriendo a marido y mujer, cualquier ley prohibiendo a marido y mujer trabajar los dos para el gobierno y vivir bajo el mismo techo, es arbitraria, irrazonable y discriminatoria; y que el título de la ley es defectuoso.

Estos fundamentos no tienen referencia al status peculiar de maestros de escuela pública. Por tanto, es innecesario considerarlos ahora debido a la conclusión nuestra de que la doctrina enunciada por la Corte Suprema de los Estados Unidos en el caso de *Brand* levanta una cuestión suficientemente seria y substancial en cuanto a la constitucionalidad de la Ley de Nepotismo al aplicarse al peticionario que nos justifique expedir un injunction para hacer efectiva nuestra jurisdicción apelativa, siempre y cuando el peticionario haya mostrado un perjuicio irreparable.

Por consiguiente pasemos a la cuestión de daños irreparables. Nos traza una pauta la regla familiar del balance de molestias y perjuicios relativos. ¿Sufriría el gobierno serios perjuicios en este caso si se concediera el injunction y más luego se sostuviera la ley? Nos parece que no, ya que el gobierno, mientras esté la apelación pendiente pagaría al peticionario su sueldo por servicios que él continuaría prestando de acuerdo con su contrato escrito. Además el gobierno quizás tendría una reclamación contra el peticionario por el exceso de $450 al año los cuales él y su esposa ganan sobre los $3,000 al año permitidos por la Ley de Nepotismo.

Por el otro lado, ¿supongamos que denegásemos esta solicitud de injunction y que posteriormente se declara que la Ley de Nepotismo no es aplicable al peticionario? Éste alega que el día 15 del presente mes él recibió una carta del Presidente de la Comisión de Servicio Civil advirtiéndole que su "familia" tenía que renunciar aquella porción de su salario que excediese $250 mensuales que perciben actualmente del gobierno. Alega además que el Comisionado de Instrucción se propone eliminarlo a él o a su esposa de la nómina para este mes, a pesar del hecho de que ellos han continuado prestando servicios como maestros de acuerdo con sus respectivos contratos. Estas alegaciones no han sido controvertidas por los demandados. El abogado de los demandados se limitó a insistir en su argumento oral que si el peticionario renunciaba el exceso de sueldo hasta que la sentencia declaratoria fuera definitiva, él podría recobrar más tarde esa cantidad del gobierno, si vence en el recurso de sentencia declaratoria. Pero uno puede, sin lugar a dudas, renunciar sus derechos constitucionales. Ésta es una regla bien establecida aun en casos criminales. Si el peticionario renuncia a la porción en exceso de su salario por consiguiente se somete a la Ley de Nepotismo bajo los términos de la ley misma. Esta acción de su parte abriría las puertas a la contención de que él ha renunciado su derecho a atacar la Ley de Nepotismo.

El peticionario alega, sin que haya sido controvertido por los demandados, que si él no renuncia a la cantidad en exceso de su sueldo no será incluído en la nómina que a fin de este mes, es decir mañana, preparará el Comisionado de Instrucción. Para evitar correr el riesgo de renunciar sus derechos constitucionales, nos parece que el peticionario sería obligado a someterse a ser separado del servicio. En ese caso, si denegamos la presente solicitud de injunction y el peticionario finalmente gana su pleito de sentencia declaratoria, su victoria podría ser infructuosa. Aun cuando repuesto en su cargo posteriormente, que puede o no ser posible de acuerdo

con las leyes que regulan la selección y la permanencia de maestros de escuela pública, su separación temporera del servicio lo expondría a perder un sinnúmero de privilegios a los cuales de otro modo tendría derecho, como lo son el retiro, el ascenso, la clasificación, y la permanencia. El balance de molestias y perjuicios relativos está en favor del peticionario. Ha demostrado suficientemente perjuicio irreparable, por lo menos a los fines de la petición ante nos.

■■ Arguye el peticionario que la petición de sentencia declaratoria es un recurso de clase instado por él tanto en su representación como en la de todos los maestros de escuela pública en idéntica situación. Los demandados no discuten esta cuestión ni en sus alegaciones ni en su alegato. Sin embargo el abogado de los demandados en su argumento oral expuso su creencia de que es un caso individual. De ordinario esa cuestión no sería importante en un recurso de sentencia declaratoria. Después que se ha dictado una resolución final en un caso como ése, se presume que los oficiales de los demandados seguirán la misma pauta en todos los casos que envuelvan personas en idéntica situación.

Pero aquí nos confrontamos con el problema debido a la necesidad de fijar el alcance de nuestro injunction y la cuantía de la fianza. Es cierto que el epígrafe de la petición está en el nombre individual de Rivera. Pero se alega a través de la petición que hay otros maestros de escuela pública en idéntica situación, y la súplica solicita un remedio que los cobije. Por tanto, creemos, por lo menos a los fines de la solicitud ahora ante nosotros, que se debe tratar como un pleito de clase. Parece que no habría objeción a que se radicara una petición de sentencia declaratoria como un pleito de clase cuando concurren cuestiones comunes de hecho y de derecho para muchas personas en situación similar. Borchard *on Declaratory Judgments* (2a. ed.) pág. 264; Anderson *on Declaratory Judgments,* pág. 122. Véase sección 66 del Código de Enjuiciamiento Civil; sección 11 de

la ley núm. 47, Leyes de Puerto Rico de 1931 (pág. 379, Ley Uniforme sobre Sentencias Declaratorias).

El peticionario solicita que la fianza que él debe prestar se fije en una cantidad nominal alegando que aún cuando se sostuviera posteriormente la ley en lo que se refiere a maestros de escuela pública, en el ínterin el gobierno no sufriría perjuicio substancial. alguno toda vez que los maestros de escuela afectados habrían continuado prestando los servicios requeridos por la ley y habrían sido compensados de acuerdo con sus actuales clasificaciones. Dadas las circunstancias de este caso debemos conceder el injunction sujeto a la prestación de una fianza por la cantidad de $1,000.

De nuevo insistimos en que no estamos ahora resolviendo la validez de la Ley de Nepotismo aplicada a los maestros de escuela pública. Por ejemplo, los demandados alegan que el caso de *Brand* no invalida la Ley de Nepotismo, puesto que en dicho caso, 303 U.S. 108, 109, se dice que "todo contrato está sujeto a la condición implícita que su cumplimiento puede ser frustrado por el ejercicio justificado del poder de policía, pero . . . para que esto suceda, el ejercicio de dicho poder debe obedecer a un fin que sea público realmente y los medios empleados deben adaptarse razonablemente a dicho fin . . . " Si el efecto de la aplicación de la Ley de Nepotismo a la situación del peticionario como maestro de escuela pública de acuerdo con su contrato escrito es la consecuencia del ejercicio del poder de policía con un fin público por medios que razonablemente se adapten a dicho fin, es el punto que tenemos que decidir, después de haberse decidido por la corte de distrito la acción para obtener una sentencia declaratoria basada en los méritos y haberse llegado a conclusiones sobre los hechos y la ley.

*Se concederá el injunction solamente para preservar el status quo hasta que se resuelva la apelación contra la resolución de la corte de distrito denegando el injunction pendente lite en el recurso sobre sentencia declaratoria.*

El Juez Presidente Sr. Del Toro no intervino.