EL PUEBLO DE PUERTO RICO, peticionario, *v.* HON. CHARLES E. FOOTE, JUEZ DE LA CORTE DE DISTRITO DE MAYAGÜEZ, demandado.

No. 297.—*Sometido:* Abril 30, 1935. *Resuelto:* Mayo 10, 1935.

*José R. Gelpí y Luis Janer, Fiscal del distrito de Mayagüez y Fiscal Auxiliar* de este Tribunal Supremo, respectivamente, abogados del peticionario; *A. Ramírez Silva y Pedro Baigés Gómez,* abogados del interventor, acusado en la causa criminal que motivó el recurso.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

En 16 de octubre de 1934 el Procurador General designó a Luis C. Trigo como Juez Municipal General para resolver los casos de *El Pueblo* v. *Arcadio Ramírez Cuerda* y *El Pueblo* v. *Anselmo Vidal,* en sustitución del Hon. Juez de la Corte Municipal de Mayagüez. Al celebrarse el juicio de Arcadio Ramírez en grado de apelación, sus abogados solicitaron el sobreseimiento y archivo del caso, alegando que la

* NOTA: Véase el prefacio.

Corte Municipal de Mayagüez, tal y como quedó constituída el día de la vista de la querella formulada contra Arcadio Ramírez no tenía jurisdicción sobre la persona del acusado. Se arguyó en apoyo de esta moción que únicamente en caso de ausencia, muerte o inhibición del juez propietario puede ser designado como sustituto el juez municipal general. A juicio de la defensa no se cumplió en este caso con los requisitos exigidos por la ley. Se alegó además que el cargo de juez municipal general no ha sido creado por ley alguna en Puerto Rico. La corte inferior ordenó el sobreseimiento y archivo del caso, por entender que no surgía de los autos que hubiese vacado el cargo de Juez Municipal de Mayagüez o que el juez propietario se encontrase ausente o estuviese inhabilitado para actuar. No conforme El Pueblo de Puerto Rico con esta resolución, ha solicitado de esta corte la expedición de un auto de *mandamus* para que se ordene al Hon. Charles E. Foote, Juez de la Corte de Distrito de Mayagüez, que tome jurisdicción en apelación de la causa del *Pueblo de Puerto Rico* v. *Arcadio Ramírez Cuerda,* por delito de acometimiento y agresión.

Se arguye por la representación de Arcadio Ramírez que en los autos deben aparecer las causas que tuvo el Procurador General para designar al juez municipal general en sustitución del Juez Municipal de Mayagüez. Al formular su excepción de falta de jurisdicción ante la corte de distrito, el abogado de Arcadio Ramírez, Sr. Ramírez Silva, hizo constar que la excepción fué presentada ante la corte municipal al iniciarse la vista de la causa y antes de que el acusado hiciese alegación alguna de inocencia o culpabilidad.

Resolviendo la cuestión planteada, el tribunal inferior se expresa así:

"La Corte, luego de oír los argumentos de las partes, es de opinión que aún asumiendo que la Ley General de Presupuestos de Puerto Rico de 1934 creare legalmente dicho cargo de Juez Municipal General en Puerto Rico, no aparece que el Juez Municipal en propiedad de la Corte Municipal de Mayagüez, Lic. Cristino R. Co-

lón, estuviera inhabilitado para actuar como tal juez en este caso, como tampoco se ha demostrado que dicho cargo estuviera vacante, tal cual dispone la disposición de la Ley Presupuestal de Puerto Rico al crear dicho cargo y establecer las condiciones que debe reunir dicho funcionario y los casos en que el mismo pueda ser designado por el Hon. Procurador General para actuar como tal Juez Municipal General.''

Como se ve, la corte inferior basó su resolución decretando el sobreseimiento y archivo del caso en no haberse demostrado que el juez propietario de la Corte Municipal de Mayagüez estuviese inhabilitado o ausente, o que dicho cargo se encontrase vacante, y por esta razón no creyó necesario considerar la cuestión relacionada con la alegada inexistencia de ley alguna creando el cargo de juez municipal general. Nosotros, sin embargo, creemos que debemos considerar esta cuestión, que ha sido debidamente planteada por el acusado.

En la Ley No. 74 de 1934 (pág. 517), que fija el presupuesto de los gastos ordinarios para el sostenimiento del gobierno de Puerto Rico, aparece una partida que dice así:

''Un juez municipal general, quien deberá ser abogado y puede ser designado por el Procurador General para actuar en casos de inhabilitación, vacante y ausencia de un juez municipal $2,308.50.''

Se alega que esta disposición es nula, porque ha sido adoptada en exceso de las facultades que tiene la Legislatura para crear cargos, de acuerdo con el inciso octavo del artículo 34 de nuestra Ley Orgánica que dice así:

''No se aprobará ningún proyecto de ley, con excepción de los de presupuesto general, que contenga más de un asunto, el cual deberá ser claramente expresado, en su título; pero si algún asunto que no esté expresado en el título fuese incluído en cualquier ley, esa ley será nula solamente en aquella parte de ella que no haya sido expresada en el título.''

Se cita en relación con este precepto prohibitivo de nuestra Carta Orgánica, el párrafo décimoquinto del mismo artículo, que copiamos a continuación:

"El proyecto de presupuesto general no comprenderá nada más que asignaciones para los gastos ordinarios de los departamentos ejecutivo, legislativo y judicial, para el pago de intereses de la deuda pública y para escuelas públicas. Todas las demás asignaciones se considerarán en proyectos separados, abarcando cada uno una sola materia."

La legislación que impugna el acusado con respecto a la creación del cargo de juez municipal general, no parece tener cabida en la ley general de presupuesto. Es verdad que el párrafo octavo del artículo 34 de nuestra Carta Orgánica permite por excepción que las leyes de presupuestos contengan más de un asunto, pero es claro que este asunto debe refe· rirse a partidas que se consignan en el presupuesto y no a ninguna legislación de carácter general que no deba ser incluída en una ley de asignaciones. El párrafo décimoquinto disipa toda duda acerca del particular, toda vez que dispone que el proyecto de presupuesto únicamente contendrá asignaciones para los gastos ordinarios de los tres departamentos del gobierno para el pago de intereses de la deuda pública y para escuelas públicas.

La constitución del estado de Pennsylvania contiene una limitación exactamente igual a la que ha sido incluída en nuestra Carta Orgánica. Comentando los efectos de esta limitación en relación con la autoridad del gobernador derivada de la facultad del veto, dice la Corte Suprema de Pennsylvania en el caso de *Commonwealth* v. *Barnett,* 48 Atl. 976:

" . . . Al redactar y aprobar un proyecto de ley, la legislatura tiene pleno dominio de todos y cada uno de los asuntos y disposiciones en él contenidos; y el gobernador, como una rama coordinada del poder legislativo, tiene, al desaprobarlo, por lo menos la misma amplitud. Mas uniendo un número de asuntos distintos en un proyecto, al gobernador se le obliga a aceptar algunas disposiciones que no puede aprobar o a vedar toda la ley, incluyendo otras que considera deseables o aún necesarias. Tales proyectos, conocidos popularmente con el mote de proyectos ómnibus, se convirtieron en un mal general no sólo por la confusión y distracción de la mente legislativa que los mismos conllevaban al unir materias incongruentes,

sino aún más por la facilidad que los mismos ofrecían a las combinaciones corruptas de las minorías con intereses encontrados para obligar a que se aprobaran proyectos con disposiciones que jamás se hubiesen adoptado, de haber sido redactados aisladamente. Tan común se hizo esta práctica que a la misma se le dió un nombre popular, generalmente conocido, o sea el de 'pase de rolo' (logrolling). Entonces surgió la práctica aún más detestable de agregar a los mismos lo que se conoce con el nombre de 'tirillas' (*riders*) (es decir, una disposición legislativa nueva y ajena al proyecto) a los proyectos de presupuesto, obligando así al ejecutivo a aprobar legislación perjudicial o a hacer que la maquinaria gubernamental se detuviera por falta de fondos. Estos fueron algunos de los males que los cambios más recientes a la Constitución trataron de remediar. La enmienda de 1864, disponiendo que ningún proyecto de ley contendrá más de un asunto, que se hará constar claramente en su título, puso fin a los proyectos ómnibus. Pero esta enmienda exceptuó los proyectos de presupuesto y en cuanto a éstos el mal subsistió. La conveniencia, si no la necesidad, de permitir que un proyecto general de presupuesto contuviera partidas diversas comprendidas dentro de la descripción de asuntos diferentes, fué patente. La Constitución actual ha remediado la dificultad—primero, incluyendo todos los proyectos en la prohibición de que ninguno contendrá más de un asunto, a excepción de los 'de presupuesto general' (art. 3, pár. 3) ; segundo, por la disposición de que 'el proyecto de presupuesto general no comprenderá nada más que asignaciones para los gastos ordinarios de los departamentos ejecutivo, legislativo y judicial, para el pago de intereses de la deuda pública y para escuelas públicas; todas las demás asignaciones se considerarán en proyectos separados, abarcando cada uno una sola materia.' (Id. pár. 15) ; y, tercero, concediendo al gobernador la facultad de 'objetar a una o más de las partidas de cualquier proyecto de presupuesto que contenga distintas partidas, y aquella parte o partes del proyecto aprobadas serán ley, y la partida o partidas objetadas serán nulas, a menos que sean aprobadas de nuevo de acuerdo con las reglas y limitaciones prescritas para la aprobación de otros proyectos sobre el veto ejecutivo.' ''

La historia de esta legislación en Pennsylvania demuestra que primeramente, para remediar el mal apuntado por la Corte Suprema de dicho estado, se prohibió por la Constitución que un proyecto de ley contuviese más de un asunto, el

cual se haría constar claramente en su título; pero como los; proyectos de asignaciones generales quedaron excluídos de· esta disposición prohibitiva, se creyó que el mal continuaba. subsistiendo con repecto a dichos proyectos. Con el propósito de corregirlo, se enmendó más tarde la constitución ratificando la prohibición original que exceptuaba la ley general de asignaciones, pero disponiendo que esta ley únicamente podría comprender las asignaciones anteriormente especificadas. La enmienda dispuso de una manera expresa algo, que quizá podría deducirse implícitamente de los mismos términos en que aparece redactada la prohibición original y la excepción de la ley de presupuesto.

De acuerdo con estas disposiciones, que son idénticas a las que rigen en Puerto Rico, únicamente tienen cabida en la ley de presupuesto general las asignaciones para gastos ordinarios de los departamentos del gobierno, para el pago de intereses de la deuda pública y para escuelas públicas. Y es natural que así sea, para que no quede frustrado el propósito de la prohibición general y se obtengan los resultados que la misma persigue. Sin estas limitaciones, la ley de presupuesto podría ser· la puerta por donde pasasen materias de legislación general que no tuvieron la oportunidad de ser amplia y abiertamente discutidas.

En el presente caso, la disposición impugnada no se limita a fijar una asignación para cubrir un gasto ordinario de un departamento del gobierno. Se va mucho más lejos, puesto que se crea un cargo de importancia, como lo es el de juez municipal general, diciéndose además que deberá ser abogado y que podrá ser designado por el Procurador General para actuar en casos de inhabilitación, vacante y ausencia de un juez municipal. Es ésta una legislación de carácter general que no puede ser incluída en un *bill* de asignaciones. *Constitutional Defense League* v. *Waters,* 164 A. 613, 309 Pa. 545; *State ex rel Davies* v. *Smith,* 75 S. W. (2d) 828.

No existiendo ley alguna creando el cargo de Juez Municipal General en la fecha en que se celebró el juicio declarando culpable al acusado, *la solicitud para que se expida un auto de mandamus debe ser desestimada.*