EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* DOMINGO RODRÍGUEZ MOJICA, acusado y apelante.

No. 5842.—*Sometido:* Enero 15, 1936. *Resuelto:* Enero 24, 1936.

*Pablo Andino,* abogado del apelante; *R. A. Gómez, Fiscal,* abogado de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR CORDOVA DÁVILA, emitió la opinión del tribunal.

Domingo Rodríguez Mojica fué acusado de un delito de acometimiento y agresión con circunstancias agravantes y declarado culpable por la Corte Municipal de Río Piedras. La Corte de Distrito de San Juan, en apelación, declaró también culpable al referido acusado y lo condenó a sufrir dos meses de cárcel. De esta sentencia apeló el acusado, imputando a la corte inferior dos errores, que pasamos a discutir.

Se alega en el primero que no existe denuncia jurada suficiente que haya conferido jurisdicción original a la Corte Municipal de Río Piedras y en apelación a la Corte de Distrito de San Juan. Se basa el acusado apelante en que la denuncia aparece jurada ante el subsecretario de la Corte Municipal de Río Piedras. Según la defensa, para recibir y autorizar juramentos es necesaria una autorización especial y concreta, de que carecen los subsecretarios de las cortes municipales. Se arguye que no hay juramento y que por lo tanto la denuncia es ineficaz, porque la ley requiere una denuncia jurada y no una mera denuncia para que pueda iniciarse un procedimiento criminal que confiera jurisdicción a la corte municipal.

Esta corte ha decidido, en el caso de *El Pueblo* v. *Colón,* 17 D.P.R. 1011, que los subsecretarios de las cortes de distrito nombrados por sus superiores están autorizados para tomar juramentos de acuerdo con la ley. El mismo principio debe aplicarse a los subsecretarios municipales, los cuales tienen el mismo poder que los secretarios para administrar juramentos. 11 C. J. 913.

Además, en el caso de *El Pueblo* v. *García,* 18 D.P.R. 570, se alegó que la denuncia carecía de juramento de acuerdo con la ley, porque fué jurada ante el secretario auxiliar de

la Corte Municipal de San Juan, quien no estaba facultado para tomar juramento. Esta corte resolvió lo siguiente:

"... hemos examinado detenidamente la transcripción del caso y no encontramos en ella que en la corte inferior se hiciera objeción alguna por defecto en el juramento de la denuncia, y es tarde ahora para promover por primera vez esta cuestión ante la Corte Suprema, pues si por ese motivo existiera defecto, no sería fundamental desde el momento en que en el juicio hubieron declaraciones juradas en apoyo de la denuncia."

Lo mismo ocurre en el presente caso. No surge de los autos que el acusado impugnara en la corte inferior el juramento prestado ante el subsecretario de la Corte Municipal de Río Piedras. Debe desestimarse el error apuntado.

Como segundo error se alega que la sentencia es contraria a la prueba y en último caso a la presunción de inocencia que sostiene la prueba conjunta de cargo y de descargo y aisladamente la de cargo.

Hemos examinado la prueba practicada y no estamos en condiciones de resolver que la corte inferior haya cometido el error que se le atribuye. El testigo Eleuterio Pantoja Meléndez declara que en la noche del 12 de enero, después de salir del cine, fué, en compañía de otros amigos, a la casa de Juan Piris, quien abrió la puerta en ropas de dormir, excusándose en lo que se cambiaba de ropa; que los otros amigos, que parecía tenían confianza con él, se dirigieron a la alacena en busca de algo de comer y que mientras iban para la nevera viraron una mesa y un quinqué, lo que formó un alboroto; que el testigo decidió marcharse por ser la primera vez que iba allí; que al estar fuera, Francisco Ruiz le aconsejó que se marcharan, respondiéndole el declarante que lo lógico era esperar allí para irse todos juntos; que en esa porfía apareció de momento el acusado, quien le dijo al otro: "Mira, éste lo que tiene es que es un sinvergüenza", y le tiró al declarante una bofetada; que al tratar de defenderse con la mano le hizo un disparo con un arma que no puede precisar si era revól-

ver o pistola, y que como consecuencia de ese disparo re-
cibió una herida en el lado derecho del cuello. Todos los
testigos, los de la acusación y los de la defensa, están con-
testes en que se hizo un disparo. Saturnino Verdejo y Amé-
rico Villarini, testigos de la defensa, declaran que el acu-
sado se encontraba reunido con ellos en una casa muy cerca
al sitio de los hechos y que cuando sonó el tiro los tres sa-
lieron al balcón, pero no llegaron a tirarse a la calle. El
testimonio de estos testigos, que tiende a establecer una
coartada, está en conflicto con la declaración del herido Eleu-
terio Pantoja. La corte inferior resolvió este conflicto de-
clarando culpable al acusado.

*El fallo de la corte inferior debe ser por lo tanto confir-
mado.*