EDUARDO ORTIZ REYES y JOSÉ PEÑA, personalmente y en representación del derecho e interés de otros en la misma clase, peticionarios, apelados y apelantes, *v.* LESLIE A. MAC-LEOD, AUDITOR DE PUERTO RICO, querellado, apelante y apelado.

Núm. 7935.—*Sometido:* Diciembre 14, 1939. *Resuelto:* Mayo 28, 1940.

*R. Martínez Nadal, Miguel A. García Méndez, Celestino Iriarte, F. Fernández Cuyar y H. González Blanes,* abogados de los peticionarios, apelados y apelantes; *Hon. Procurador General George A. Malcolm (B. Fernández García, Ex-Procurador General,* en el alegato) y *E. Campos del Toro, Procurador General Auxiliar y E. Córdova Díaz, Subprocurador,* abogados de el querellado, apelante y apelado.

* NOTA: Véase el prefacio.

El Juez Asociado Señor Wolf emitió la opinión del tribunal.

A nombre propio y de aquellas otras personas que pudieran estar en condiciones similares, Eduardo Ortiz Reyes y José Peña presentaron demanda de *injunction* en solicitud de que se ordenara al Contador de Puerto Rico que se abstuviera de desaprobar, retener o interrumpir en forma alguna el pago de los sueldos de los peticionarios y de las personas por ellos representadas, todo ello de acuerdo con las disposiciones de la Ley núm. 324 de mayo 15, 1938 (leyes de ese año, pág. 593). Esa ley especificaba cierto número de personas cuyos deberes se definían y cuyos sueldos se ordenaba se pagaran de conformidad con la misma. En apoyo de su proceder, la Asamblea Legislativa se basó, bien en su Resolución Conjunta de 1917, o específicamente designó y definió ciertos funcionarios que debían ser pagados. Esa ley también contiene el disponiéndose de que los empleados temporeros serán pagados de la partida "Imprevistos" del Senado y la Cámara. La ley de 1938, supra, era en realidad el presupuesto para el año fiscal 1938–1939.

El Contador, por mediación de la oficina del Fiscal General, contestó. En una estipulación suscrita por las partes se convino en todos los hechos del caso.

La Corte de Distrito de San Juan, mediante *injunction*, sostuvo la actuación de la Asamblea Legislativa en tanto en cuanto los deberes de los empleados allí especificados estaban definidos por la Ley General de Presupuesto o por cualquiera otra ley o resolución anterior, mas se negó a aprobar ciertos otros empleados conocidos por "temporeros" cuyos sueldos no estaban especialmente especificados en el presupuesto, sino que eran fijados por los presidentes del Senado y la Cámara.

El Contador de Puerto Rico apeló de la sentencia dictada por la corte inferior en tanto en cuanto ésta declaró con lugar el *injunction*. Las personas específicas cuyos sueldos no se ordenó se pagara, digamos así, también apelaron. Sus abogados obtuvieron un número de prórrogas para radicar

su alegato, pero nunca lo presentaron. Creemos que debe constar claramente que, ora se sostenga o no la opinión de la corte de distrito, estos últimos apelantes no han presentado un buen caso.

La controversia gira, según convinieron las partes, en torno a la interpretación que ha de dársele a los siguientes párrafos del artículo 34 de la Carta Orgánica:

"Ninguna ley será restablecida o enmendada ni se dará mayor alcance a sus disposiciones, ni se conferirán las facultades en ella contenidas, haciendo referencia a su título solamente, sino que toda la parte de ella que sea restablecida, enmendada, extendida o conferida será decretada nuevamente y publicada en su totalidad.

" *    *    *    *    *    *    *

"La Asamblea Legislativa prescribirá por ley el número, deberes y remuneración de los funcionarios y empleados de cada Cámara; y ningún pago con fondos del Tesoro por servicios a la Asamblea Legislativa, se hará ni se autorizará en modo alguno a favor de ninguna persona, a no ser un funcionario o empleado en servicio activo elegido o nombrado en cumplimiento de la ley.

" *    *    *    *    *    *    *

"El proyecto de presupuesto general no comprenderá nada más que asignaciones para los gastos ordinarios de los departamentos ejecutivo, legislativo y judicial, para el pago de intereses de la deuda pública y para escuelas públicas. Todas las demás asignaciones se consignarán en proyectos separados, abarcando cada uno una sola materia."

El Contador parece sostener a veces que la Ley de Presupuesto General no puede considerarse como que tiene su origen en un proyecto, tal cual generalmente se usa la palabra "proyecto" en la Carta Orgánica. Ella no tiene que ser presentada dentro del término de cuarenta días y se hacen varias excepciones a su favor. El Contador, sin embargo, realmente admite que para ciertos fines la Ley de Presupuesto General debe ser tenida como un proyecto, toda vez que tiene que ser considerada en comisión e informada a ambas cámaras. Un número de cortes ha resuelto que la Ley de Presupuesto General puede crear ciertos cargos o

empleos, y que sería absurdo exigir que todo funcionario incidental del gobierno sea nombrado y sus deberes definidos en un proyecto separado.

Algunas de las disposiciones anteriores han sido discutidas recientemente en los casos de: *De la Vega* v. *Sancho Bonet,* ante, pág. 753; *Soto Zaragoza* v. *MacLeod,* ante, pag. 807; *Nazario* v. *Winship,* ante, pág. 837; y *Ugarte* v. *MacLeod,* ante, pág. 842.

Creemos que la contención principal gira en torno al llamado párrafo 15 del Artículo 34 de la Carta Orgánica que copiaremos de nuevo:

"El proyecto de presupuesto general no comprenderá nada más que asignaciones para los gastos ordinarios de los departamentos ejecutivo, legislativo y judicial, para el pago de intereses de la deuda pública y para escuelas públicas. Todas las demás asignaciones se consignarán en proyectos separados, abarcando cada uno una sola materia."

No tenemos que hacer una relación estricta de estas varias disposiciones constitucionales. Ha sido muy bien hecha tanto en la opinión de la corte inferior como en el alegato del Contador. Algunos de los casos que sostienen el criterio de que el presupuesto puede crear cierto número de funcionarios son los siguientes: *Commonwealth ex rel. Greene* v. *Gregg,* 161 Pa. 582, 29 Atl. 297.; *State* v. *Clausen,* 139 P. 653, y *Lewis* v. *Colgan,* 47 P. 357.

Copiaremos unos cuantos párrafos del caso de Greene, supra:

"La única cuestión presentada es si la partida en el presupuesto general de 1893, que asigna cierta suma 'para el pago de sueldo de un secretario en la oficina de los protonotarios de la Corte Suprema' etc., es una orden válida al Contador General y al Tesorero del estado para que expidan y paguen libramientos para tal fin. La corte inferior resolvió que toda vez que la compensación del protonotario ha sido fijada por las leyes de febrero 22, 1821, y abril 2, 1868, y puesto que la presente ley no impone nuevos deberes, ello equivalía a una mera donación, que violaba los preceptos constitucionales. Empero, al así resolverlo, la corte inferior tuvo el cuidado de decir, que 'no

tenía duda de que la Asamblea Legislativa podía legalmente crear el cargo de secretario del protonotario de la Corte Suprema, y proveer su compensación mediante la fijación de un sueldo, al igual que por ley podía aumentar los honorarios o la remuneración del protonotario mismo, pero que en uno u otro caso esto tenía que hacerse en una ley separada.' La parte apelada también admite esta posición al argumentar el caso de autos. Por tanto, es cuestión no controvertida, que la Asamblea Legislativa podía hacer sustancialmente lo que hizo y la única cuestión a dirimir es si podía efectuarlo en la forma en que lo hizo. En general no se alegará que el poder legislativo es el único juez de la forma en que se redactarán sus leyes, y su facultad a ese respecto no se puede poner en tela de juicio a menos que exceda un claro precepto constitucional. La única disposición aquí invocada es el párrafo 15 del artículo 3: 'El proyecto de presupuesto general no comprenderá nada más que asignaciones para los gastos ordinarios de los departamentos ejecutivo, legislativo y judicial del estado', etc. La historia y móvil de ese párrafo son bien conocidos. Se dirigió contra la práctica poco encomiástica de incluir una medida de validez dudosa por sus propios méritos en la ley de presupuesto general—insertándola, en términos legislativos, en forma de tirilla—para obligar a los miembros de los cuerpos legislativos a votar en su favor o paralizar el engranaje gubernamental . . . Los proyectos de presupuesto general, por su naturaleza, de ordinario comprenden un número de partidas, todas las cuales no se refieren estrictamente a un solo asunto. Quedaron, por tanto, exentas del requisito del párrafo dos, y esta exención requirió el párrafo 15. El objeto de ambos es el mismo. ¿Cae la presente medida dentro del mal que se intentó obviar? Los casos citados por el apelante, que se extienden a través de un período de veinte años desde que se adoptó la Constitución, demuestran la interpretación legislativa de la materia; y podemos inferir lógicamente que también denotan la interpretación del ejecutivo, toda vez que las varias leyes citadas fueron aprobadas por el Gobernador. Tal interpretación y práctica no son desde luego obligatorias para el poder judicial, que es la autoridad llamada a interpretar la Constitución en última instancia; pero como criterio de dos ramas coordinadas del Gobierno esas interpretaciones merecen respetuosa consideración y fuerza persuasiva si es que el asunto es dudoso. No puede asumirse que la Constitución tuvo por miras obligar al poder legislativo aun a supervisar todos los detalles del Gobierno. Ésas son funciones propias de las ramas ejecutiva y judicial. El trabajo a realizar y el personal de oficina necesario, son cuestiones de detalle, res-

pecto a las cuales mucho por necesidad ha de dejarse al jefe de cada departamento. Está claramente dentro de los poderes de la Asamblea Legislativa el tener el control general de los gastos de los fondos públicos, pero esto es así siempre que no se desembolsen ningunos fondos sin haberse hecho una asignación previa para tal fin. Al así tener el dominio de las erogaciones, el poder legislativo controla toda la materia con toda la amplitud que bajo la Constitución le exigen sus funciones. Al aprobar proyectos de presupuesto general, la Constitución limita el poder legislativo a los 'gastos ordinarios de los departamentos ejecutivo, legislativo y judicial', y algunas otras cuestiones que se enumeran, y toda asignación válida hecha en esta forma debe caer razonablemente dentro de la descripción de 'gastos ordinarios'; pero sería de lo más absurdo que se aprobara un proyecto de ley separado cada vez que se necesitara un escribiente adicional en un departamento gubernamental. En lo que respecta a la partida específica que está bajo nuestra consideración se desprende que la misma fué aprobada para pagar parte del trabajo ordinario y corriente de los funcionarios especificados y que era por tanto para cubrir sus gastos ordinarios. Con ello el poder legislativo reconoce que el protonotario no podía hacer por sí mismo todo el trabajo de su oficina y autoriza a este funcionario efectuar parte del mismo a expensas del Gobierno. Con tal reconocimiento y autoridad, se convierte en parte de los gastos ordinarios de su oficina, y el hecho de que su cargo sea parte del departamento judicial del estado es punto que no admite discusión. Conforme ya hemos dicho se admite plenamente que la Asamblea Legislativa tuvo amplios poderes para hacer sustancialmente lo que hizo, es decir, autorizar el nombramiento de un secretario en la oficina del protonotario y ordenar que su sueldo fuera pagado del tesoro público; y como el fin de tal nombramiento, y los deberes de la persona nombrada, fueron garantizar el cumplimiento del trabajo corriente y ordinario de esa oficina, somos de opinión que el poder legislativo podía constitucionalmente llevar a cabo tal cosa en la forma en que lo hizo, mediante la fijación de una partida en el proyecto de presupuesto general para el departamento judicial.''

Véanse *State* v. *Clausen,* supra, y *Lewis* v. *Colgan,* supra, citados por la corte inferior.

Casos que resuelven lo contrario son los siguientes: *Sellers* v. *Frohmiller,* 24 P. (2d) 666; *Carr* v. *Frohmiller,* 56 P. (2d) 644; *State* v. *Eggers,* 136 P. 100; *Chicago Title & Trust*

*Co.* v. *Schwartz,* 171 N. E. 169; *Bryan* v. *Menefee,* 95 P. 471; *Pueblo* v. *Corte de Distrito,* 48 D.P.R. 492; *State* v. *Thompson,* 289 S. W. 338, 340; *State* v. *Smith,* 75 S. W. (2d) 828.

En el caso de *Pueblo* v. *Corte de Distrito, Hon. Charles E. Foote, Juez,* 48 D.P.R. 492, este tribunal resolvió que el cargo de juez municipal *at large* no podía ser creado por la ley de presupuesto general. Luego de discutir la ley de Pensilvania y de citar del caso de *Commonwealth* v. *Barnett,* 48 Atl. 976 (1901), este tribunal dijo:

"De acuerdo con estas disposiciones, que son idénticas a las que rigen en Puerto Rico, únicamente tienen cabida en la ley de presupuesto general las asignaciones para gastos ordinarios de los departamentos del gobierno, para el pago de intereses de la deuda pública y para escuelas públicas. Y es natural que así sea, para que no quede frustrado el propósito de la prohibición general y se obtengan los resultados que la misma persigue. Sin estas limitaciones, la ley de presupuesto podría ser la puerta por donde pasasen materias de legislación general que no tuvieron la oportunidad de ser amplia y abiertamente discutidas.

"En el presente caso, la disposición impugnada no se limita a fijar una asignación para cubrir un gasto ordinario de un departamento del gobierno. Se va mucho más lejos, puesto que se crea un cargo de importancia, como lo es el de juez municipal general, diciéndose además que deberá ser abogado y que podrá ser designado por el Procurador General para actuar en casos de inhabilitación, vacante y ausencia de un juez municipal. Es ésta una legislación de carácter general que no puede ser incluída en un *bill* de asignaciones. *Constitutional Defense League* v. *Waters,* 164 A. 613, 309 Pa. 545; *State ex rel Davies* v. *Smith,* 75 S. W. (2d) 828."

En el caso de Foote, supra, hubo una asignación extraordinaria, que no fué hecha para un cargo corriente. Necesariamente, conforme demuestra el caso de Greene, el presupuesto sólo puede incluir los "gastos ordinarios" del gobierno. Resolvemos que empleados cuyos puestos surgen en el curso ordinario del gobierno pueden ser creados por la ley general de presupuesto. Tales puestos, sin embargo, deben estar dentro de los "gastos ordinarios" de uno de los departamentos. Si en algún caso se demuestra que ciertos

empleados son innecesarios, el recurso de *mandamus* no procede. El Pueblo no nos convence de que los empleados apelados fueran innecesarios y la sentencia a este respecto debe ser confirmada.

*La otra apelación debe igualmente ser confirmada.*