EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN MÁRQUEZ CARRIÓN, acusado y apelante.

Núm. 9888.—*Sometido:* Marzo 24, 1943. *Resuelto:* Mayo 18, 1943.

*Juan Nevárez Santiago*, abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar*, abogados de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Juan Márquez Carrión fué denunciado ante la Corte Municipal de Fajardo de haber acometido y agredido con un puñal a Juan López Rodríguez. La denuncia termina así:

"(Firmado) Perciliano de Jesús, Policía Insular No. 432, Denunciante.—Jurada ante mí hoy 7 de nov. de 1940.—(Firmado) H. Figueroa (*sic*), Subsec. de la Corte Municipal de Fajardo."

La Corte de Distrito de Humacao resolviendo el caso en apelación dictó sentencia condenando al denunciado a cincuenta dólares de multa. Márquez apeló señalando como único error el cometido por la corte de distrito "al declarar sin lugar la cuestión de derecho presentada por el acusado a los efectos de que la Corte de Distrito de Humacao carecía de jurisdicción porque la denuncia no había sido jurada ante un funcionario de los que tienen autoridad para administrar juramentos, ya que no existe en la Corte Municipal de Fajardo ningún cargo de subsecretario ni José Figueroa (*sic*) es subsecretario de dicha corte porque no existe ley en Puerto Rico creando ese cargo."

La discusión del señalamiento se limita a lo que sigue:

"El acusado llama la atención de esta honorable Corte hacia el hecho de que al crearse la Corte Municipal de Fajardo, su organización se limitó a los siguientes funcionarios: un juez, un secretario, y un márshal.

"Posteriormente en la Ley de Presupuesto General en el año 1936, fueron creados dos cargos de subsecretarios y un cargo de submárshal, pero tales cargos no fueron creados por leyes especiales ni en otra forma y sus deberes no han sido definidos en forma alguna por ley. Por consiguiente José Figueroa (sic) no tenía autoridad para tomar el juramento en la denuncia de cuya sentencia se apela para ante esta honorable Corte y como la cuestión fué levantada a tiempo en la honorable Corte de Distrito de Humacao, el acusado cree que procede la revocación de la sentencia impuéstale y así lo solicita respetuosamente de este honorable Tribunal."

██ En el caso del *Pueblo* v. *Foote, Juez*, 48 D.P.R. 492, 497, esta corte resolvió que el cargo de juez municipal general no podía crearse por la ley de presupuesto. En su opinión se expresó como sigue:

"La disposición impugnada no se limita a fijar una asignación para cubrir un gasto ordinario de un departamento del gobierno. Se va mucho más lejos, puesto que se crea un cargo de importancia, como lo es el de juez municipal general, diciéndose además que deberá ser abogado y que podrá ser designado por el Procurador General para actuar en casos de inhabilitación, vacante y ausencia de un juez

municipal. Es ésta una legislación de carácter general que no puede ser incluída en un *bill* de asignaciones. *Constitutional Defense League* v. *Waters*, 164 A. 613, 309 Pa. 545; *State ex rel. Davies* v. *Smith*, 75 S. W. (2d) 828.''

De la opinión de esta corte en el caso de *Landrón* v. *Quiñones*, 52 D.P.R. 86, 91, transcribimos:

''En apoyo del tercer señalamiento los apelantes citan el caso del *Pueblo* v. *Foote*, 48 D.P.R. 492, al efecto de que la Asamblea Legislativa no puede crear un cargo a virtud de una disposición contenida en una ley de presupuesto. En el presente caso el poder legislativo meramente asignó determinada suma de dinero como sueldo de un oficial jurídico. No trató de crear ningún cargo. Si el oficial jurídico en cuestión no era un funcionario público, era un empleado dentro del significado de la sección 19 de la Ley de Servicio Público. El error cometido por el juez de distrito al referirse al puesto de oficial jurídico como un cargo, no es suficiente motivo para una revocación.''

La cuestión fué estudiada de nuevo por la corte en *Ortiz Reyes* v. *MacLeod*, 56 D.P.R. 871, 877, resolviéndose que ''empleados cuyos puestos surgen en el curso ordinario del gobierno pueden ser creados por la ley general de presupuesto.''

Y por último se consideró en *Hopgood* v. *Porto Rican and American Ins. Co.*, 60 D.P.R. 329, 333, en el que, después de hacerse referencia a los casos citados, se concluye:

''No es necesario que determinemos en este caso si (a) el puesto de Subcomisionado existe, sino que el incumbente es un mero empleado como en los casos de *Landrón* y *Ortiz*, o si (b) no existe tal cargo toda vez que envuelve el ejercicio de poderes ejecutivos y de discreción por un funcionario público, y puede por tanto ser creado solamente mediante una ley especial, como resolvimos en *Pueblo* v. *Corte de Distrito*, supra. De cualquier modo el resultado en este caso es el mismo: en el Departamento del Interior no existe el cargo de 'auxiliar' que conlleve los poderes y deberes prescritos por el artículo 172 del Código Político.''

¿Es el subsecretario de una corte municipal un funcionario o un empleado? Veámoslo.

Las corte municipales de Puerto Rico funcionan desde que fueron organizadas por el Gobierno Militar, en 1899. La Ley Orgánica de 1900—sección 33—reconoció su existencia, ordenó que continuaran como existían y confirió autoridad a la Asamblea Legislativa para legislar de tiempo en tiempo, conforme tuviera por conveniente, con referencia a dichas cortes y cualesquiera otras que estimara oportuno establecer, su organización, "el número de jueces y empleados, y agregados para cada una"—"the number of judges and officials and attachés for each," dice el original inglés—, su jurisdicción, sus procedimientos y demás asuntos que las afectaren.

La Asamblea Legislativa las reorganizó en 1904, disponiendo la sección once de la ley reorganizadora, página 97, Leyes de 1904, que "En cada Corte Municipal habrá un Secretario que será designado por elección popular." En la Compilación de 1911, páginas 267 a 269, se encuentran varias leyes creando determinadas cortes municipales con sus jueces, secretarios y marshals. Se varió luego el método de nombramiento y cada vez que una nueva corte se creaba, lo fué siempre por ley especial, no a virtud de asignaciones en el presupuesto.

Aquí no está envuelta la creación de una corte municipal. En tal caso no habría duda alguna de que se necesitaba una ley para crearla. Se trata de una corte municipal ya creada con su juez, su secretario y su márshal a la cual se llevan dos subsecretarios por medio de asignaciones para el pago de sus sueldos.

Examinaremos primero la jurisprudencia en relación con lo que se entiende en general por funcionario público, luego en cuanto se refiere a los secretarios de las cortes y por último en lo que respecta a los subsecretarios.

"Cuando surge una cuestión en cuanto a si un puesto específico dentro del servicio público es un cargo o meramente un empleo," se dice en 42 Am. Jur., *Public Officers*, §12, "deben considerarse cuáles son los elementos distintivos de

un cargo público . . . Brevemente expuesto, un puesto es un cargo público cuando ha sido creado por ley, con deberes impuestos a su incumbente que envuelven algún ejercicio del poder soberano y en cuyo desempeño está envuelto el interés público, y que son también continuos en su naturaleza, y no ocasionales o intermitentes; mientras que un empleo público, por otro lado, es un puesto en el servicio público que carece de suficientes elementos o características de los arriba mencionados para convertirlo en un cargo público. Empero, aún cuando el nombramiento sea de la naturaleza de un empleo, el incumbente puede ser un funcionario público si concurren los elementos necesarios de un cargo público.''

Y agrega el mismo autor, basándose siempre en las decisiones de los tribunales, en la sección que sigue—13—: ''Se distingue un funcionario de un empleado en su mayor importancia, dignidad e independencia de su posición y en la autoridad para dirigir o supervisar. El primero tiene el poder de dirección, supervisión y control. Pero el hecho de que un puesto sea subordinado y su incumbente deba responder a un superior, no impide que aquél sea un funcionario, según se distingue de un mero empleado. Un funcionario subordinado o inferior no deja de ser un funcionario. Cierto grado de responsabilidad es exigido de un funcionario público, que no es exigido de un mero empleado.''

Con respecto a los secretarios de las cortes, se dice por la misma autoridad: ''El secretario de una corte de justicia, usando el vocablo como el título de un funcionario determinado, es un funcionario ministerial de la corte, que tiene la custodia de sus archivos y sellos, con poder para certificar la corrección de copias hechas de tales archivos, y que posee autoridad para desempeñar ciertos actos de naturaleza judicial que son incidentales a sus deberes ministeriales.'' 10 Am. Jur., *Clerks of Courts*, §2.

Y en cuanto a los subsecretarios: '' . . . Como regla general un subsecretario puede desempeñar todos aquellos ac-

tos ministeriales correspondientes al cargo de su superior. Así, el subsecretario puede ejercer el poder de autenticar documentos para su radicación cuando su superior tiene ese poder. Los poderes judiciales de un secretario no pueden, sin embargo, ser delegados en el subsecretario a menos que la ley así lo permita. En aquellas jurisdicciones en que el subsecretario es considerado como un funcionario público independiente y está autorizado por ley a ejecutar cualquier acto que su principal pueda ejecutar, tiene autoridad en sí mismo para actuar solo, por mandato de ley; y como esa autorización no se deriva únicamente del principal, está bien ejercitada a nombre del subsecretario únicamente sin mencionar a su principal.'' 10 Am. Jur., *Clerks of·Courts*, §19.

Si a la luz de esa jurisprudencia examinamos los antecedentes históricos mencionados en relación con el cargo de secretario de las cortes municipales y lo dispuesto en una reciente ley decretada por la Legislatura ''para regular las funciones de los subsecretarios· y submarshals de las cortes municipales,'' deberemos concluir que dichos subsecretarios tienen las características y deben ser considerados como funcionarios más bien que como empleados.

Dicha ley es la núm. 6 de 1937, pág. 134. Su sección 1 es como sigue:

''Los subsecretarios y submarshals de las cortes municipales tendrán los mismos poderes, atribuciones, obligaciones y deberes que los marshals y secretarios de dichas cortes, respectivamente, y podrán autorizar y firmar certificaciones, citaciones y en general todas aquellas diligencias que están autorizados para ejecutar los marshals y secretarios, teniendo sus actuaciones la misma validez que las autorizadas por éstos; pero cuando estuvieren actuando al mismo tiempo que los secretarios y marshals, podrán firmar diligencias y certificaciones, haciendo constar en antefirma que lo hacen 'por orden' de ellos; y en ausencia podrán firmar haciendo constar después de sus firmas que lo hacen como funcionarios accidentales.''

Si aplicamos rígidamente la regla de que por medio de la ley de presupuesto sólo pueden crearse plazas de emplea-

dos al fijarse el pago de su remuneración, tendríamos que resolver la contención planteada en este caso en favor del apelante. Sin embargo, si bien el subsecretario de una corte municipal es un funcionario, no puede negarse que cuando se nombra para una corte ya creada, su nombramiento implica únicamente la adición de un empleado más cuyas funciones han sido previamente fijadas por el estatuto, en atención al aumento del trabajo en dicha corte, y en tal caso, no parece absolutamente necesario exigir que se decrete una ley especial, separada, para crear el cargo.

Parece propio sin embargo hacer énfasis en que la mejor práctica a seguir y la que a nuestro juicio debe seguirse es la de la ley separada para la creación del cargo por ínfimo que éste sea, porque esa práctica en la que esté más en armonía con el propósito de la ley federal sobre la materia que no es otro que el de que cada legislador pueda darse cuenta exacta de las medidas que aprueba.

Para llegar a la conclusión a que hemos llegado nos hemos inspirado además en el razonamiento de la Corte Suprema de Pensilvania al decidir el caso de *Commonwealth ex rel. Greene* v. *Gregg,* 161 Pa. 582, 29 A. 297, transcrito en la decisión de esta Corte en *Ortiz Reyes* v. *MacLeod,* supra, como sigue:

" 'La única cuestión presentada es si la partida en el presupuesto general de 1893, que asigna cierta suma "para el pago de sueldo de un secretario en la oficina de los protonotarios de la Corte Suprema" etc., es una orden válida al Contador General y al Tesorero del estado para que expidan y paguen libramientos para tal fin. . . . Por tanto, es cuestión no controvertida, que la Asamblea Legislativa podía hacer sustancialmente lo que hizo y la única cuestión a dirimir es si podía efectuarlo en la forma en que lo hizo. En general no se alegará que el poder legislativo es el único juez de la forma en que se redactarán sus leyes, y su facultad a ese respecto no se puede poner en tela de juicio a menos que exceda un claro precepto constitucional. La única disposición aquí invocada es el párrafo 15 del artículo 3: "El proyecto de presupuesto general no comprenderá nada más que asignaciones para los gastos ordinarios

de los departamentos ejecutivo, legislativo y judicial del estado'',
etc. La historia y móvil de ese párrafo son bien conocidos. Se dirigió contra la práctica poco encomiástica de incluir una medida de.
validez dudosa por sus propios méritos en la ley de presupuesto general—insertándola, en términos legislativos, en forma de tirilla—
para obligar a los miembros de los cuerpos legislativos a votar en
su favor o paralizar el engranaje gubernamental. . . . Los proyectos de presupuesto general, por su naturaleza, de ordinario comprenden un número de partidas, todas las cuales no se refieren estrictamente a un solo asunto. Quedaron, por tanto, exentas del requisito
del párrafo dos, y esta exención requirió el párrafo 15. El objeto
de ambos es el mismo. ¿Cae la presente medida dentro del mal que
se intentó obviar? Los casos citados por el apelante, que se extienden
a través de un período de veinte años desde que se adoptó la Constitución, demuestran la interpretación legislativa de la materia; y
podemos inferir lógicamente que también denotan la interpretación
del ejecutivo, toda vez que las varias leyes citadas fueron aprobadas
por el Gobernador. Tal interpretación y práctica no son desde
luego obligatorias para el poder judicial, que es la autoridad llamada a interpretar la Constitución en última instancia; pero como
criterio de dos ramas coordinadas del Gobierno esas interpretaciones
merecen respetuosa consideración y fuerza persuasiva si es que el
asunto es dudoso. No puede asumirse que la Constitución tuvo por
miras obligar al poder legislativo aun .a supervisar todos los detalles
del Gobierno. Ésas son funciones propias de las ramas ejecutiva y
judicial. El trabajo a realizar y el personal de oficina necesario,
son cuestiones de, detalle, respecto a las cuales mucho por necesidad
ha de dejarse al jefe de cada departamento. Está claramente dentro
de los poderes de la Asamblea Legislativa el tener el control general
de los gastos de los fondos públicos, pero esto es así siempre que no
se desembolsen ningunos fondos sin haberse hecho una asignación
previa para tal fin. Al así tener el dominio de las erogaciones, el
poder legislativo controla toda la materia con toda la amplitud que
bajo la Constitución le exigen sus funciones. Al aprobar proyectos
de presupuesto general, la Constitución limita el poder legislativo a
los ''gastos ordinarios de los departamentos ejecutivo, legislativo y
judicial'', y algunas otras cuestiones que se enumeran, y toda asignación válida hecha en esta forma debe caer razonablemente dentro
de la descripción de ''gastos ordinarios''; pero sería de lo más absurdo que se aprobara un proyecto de ley separado cada vez que
se necesitara un escribiente adicional en un departamento guberna-

mental. En lo que respecta a la partida específica que está bajo nuestra consideración se desprende que la misma fué aprobada para pagar parte del trabajo ordinario y corriente de los funcionarios especificados y que era por tanto para cubrir sus gastos ordinarios. Con ello el poder legislativo reconoce que el protonotario no podía hacer por sí mismo todo el trabajo de su oficina y autoriza- a este funcionario efectuar parte del mismo a expensas del Gobierno. Con tal reconocimiento y autoridad, se convierte en parte de los gastos ordinarios de su oficina, y el hecho de que su cargo sea parte del departamento judicial del estado es punto que no admite discusión. Conforme ya hemos dicho se admite plenamente que la Asamblea Legislativa tuvo amplios poderes para hacer sustancialmente lo que hizo, es decir, autorizar el nombramiento de un secretario en la oficina del protonotario y ordenar que su sueldo fuera pagado del tesoro público; y como el fin de tal nombramiento, y los deberes de la persona nombrada, fueron garantizar el cumplimiento del trabajo corriente y ordinario de esa oficina, somos de opinión que el poder legislativo podía constitucionalmente llevar a cabo tal cosa en la forma en que lo hizo, mediante la fijación de una partida en el proyecto de presupuesto general para el departamento judicial.' ''

Interpretada de ese modo la ley, atendidas todas las circunstancias concurrentes que expusimos, debemos resolver en este caso concreto que existe el cargo de subsecretario de la Corte Municipal de Fajardo y, por lo tanto, que la denuncia, base del proceso, fué jurada ante un funcionario que estaba autorizado para tomar juramentos. *Pueblo* v. *Rodríguez,* 49 D.P.R. 470. El error que se señala no fué, en tal virtud, cometido, y en su consecuencia *procede declarar el recurso sin lugar y confirmar la sentencia.*

El Juez Asociado Sr. Snyder está conforme con el resultado, por entender que el Subsecretario de la Corte Municipal de Fajardo es un empleado y no un funcionario público.

OPINIÓN DISIDENTE EMITIDA POR EL JUEZ ASOCIADO SR. TODD, JR.

Mayo 19, 1943.

Estoy conforme con la primera conclusión a que se llega en la opinión de la mayoría en el sentido de que el subsecretario de una corte municipal es un funcionario. Véase

*McClung* v. *Johnson,* 289 Pac. 199 (Cal. 1930); *State* v. *Smith,* 96 So. 127 (La. 1923). Empero, establecida esta premisa, disiento en cuanto a la segunda conclusión al efecto de que dicho cargo puede ser creado en la ley de presupuesto en violación del artículo 34 de la Carta Orgánica. Soy de opinión que el caso de *Commonwealth ex rel. Greene* v. *Gregg,* 161 Pa. 582, 29 Atl. 297, citado como autoridad tanto en el caso de *Ortiz Reyes* v. *McLeod,* 56 D.P.R. 871, 877, como en la opinión de la mayoría no es aplicable a los hechos del caso de autos por no tratarse aquí de un "*empleado* cuyo puesto surja en el curso ordinario del gobierno". *Cf. State* v. *Thompson,* 289 S. W. 338 (Mo. 1926) y *Sellers* v. *Frohmiller,* 24 P. (2d) 666 (Ariz. 1933).

*Debe revocarse la sentencia.*